[No. 1464, May 15, 1912.]

TERRITORY OF NEW MEXICO, Appellee, v. THOMAS M. DAVENPORT, Appellant.
Appeal from District Court, Curry County.

SYLLABUS (BY THE COURT).

1. Base ball does not come within the class of "sports," prohibited on Sunday by section 1368, C. L. 1897.

2. The common law rule for the construction of criminal statutes being in force in New Mexico, such statutes must be strictly construed, according to their letter, and nothing must be regarded as being included within such a statute, that is not both within its letter and spirit.

3. By the use of the words "Horse racing and cock fighting" the legislature pointed out the class of sports which it intended to prohibit, and base ball, not being in the same class of sports, is not prohibited.

4. Section 1368, C. L. 1897, does not forbid engaging in a public exhibition or public meeting, but makes it an offense only to attend such public meeting or exhibition.

5. Playing base ball does not constitute labor within the meaning of said section 1368.

6. Base ball is essentially and naturally in the nature of amusements, both for the participants and spectators, and is far removed from the ordinary meaning of the word "labor."

HARRY L. PATTON, HENRY G. COORS, JR., for Appellant.

The game of baseball is not such a game as is contemplated by the statute, even if the court might hold that the disturbing element was not necessary. State v. Prather, 100 Pac. 57.

The doctrine of *ejusdem generis*. St. Louis Agr. & Mech. Assn. v. Delano, 108 Mo. 217; Howell v. Stewart, 54 Mo. 400; Fuse v. Spaunharst, 67 Mo. 256; State v. Bryan, 90 Mo. 534; St. Louis v. Laughlin, 49 Mo. 559; ex parte Neet, 157 Mo. 527; People v. Deenan, 3 N. Y. Crim. Rep. 127; People v. Roach, 114 N. Y. S. 724; People v. DeMott, 77 N. Y. S. 249; People v. Hesterberg, 89 N. Y. S. 498.

The defendant was not guilty of labor. St. Louis Agr. & Mech. Assn. v. Delano, 37 Mo. App. 284; Edwards v. McClellar, 118 N. Y. S. 181; William Fox Amusement Co. v. McClellan, 114 N. Y. S. 594.

FRANK W. CLANCY, Attorney General, for Appellee.

The only question to be considered is whether, under

our statute, the game of baseball is a forbidden sport. Ex
parte Neet, 157 Mo. 527; People v. Hesterberg, 89 N. Y..
Supp. 498.

## STATEMENT OF FACTS.

Information was filed in the District Court of Curry
County, charging the defendant, in three counts, of having
violated section 1368 of the C. L. 1897, commonly known
as the "Sunday Law." A jury was waived and the cause
was submitted to the court for determination, upon the
following agreed statement of facts, viz:

"First. That on the 20th day of August, 1911, in the
Town of Clovis, in Curry County, New Mexico, the same·
being Sunday, the first day of the week, the said defen-
.dant, Thomas M. Davenport did engage in and attended
a game of baseball. That said defendant Davenport, was
personally present and a witness of said ball game afore-
said, and participated in and actually played as one of
the players in said game. That said ball game was not
for religious worship or instruction. That a large crowd
of persons was present and witnessed said ball game, and
.paid money for admission tickets for the privilege of so
doing. That said ball game was solely for the purpose
of amusement.

"Second. That on the said 20th day of August, 1911,
in the town of Clovis, in Curry, New Mexico, the said
date being Sunday, the first day of the week, the said
defendant, Thomas M. Davenport did engage in the man-
aging, promoting and playing of a game of baseball. That
the said defendant, Davenport, arranged for the playing·
of said game, in that he secured the services of players to
play the game, secured a park or place in which the game
was played, and directed and managed said game while it
was being played, and actually engaged personally in the
playing thereof. That an admission fee was fixed by the said
defendant, Davenport, collected under his orders, and
that he and the players associated with him in the play-
ing of said game of ball benefited pecuniarily therefrom.
That several hundred persons attended and witnessed the·

game.   That the said game of baseball aforesaid was not
a work of labor of necessity, charity, or mercy."

The court found the defendant guilty in all three
counts, and judgment was rendered accordingly, from
which judgment this appeal is prosecuted.

### OPINION OF THE COURT.

HANNA, J.—The information charged the defendant
with having engaged in a game of base ball on Sunday, and
that he thereby violated section 1368, C. L. 1897, in three
particulars, viz:   First:   That it was such sport as con-
stituted a violation of the statute; second: That it con-
stituted attendance at a public meeting, and third, that
it constituted labor.   Section 1368 as follows:

"Any person, or persons who shall be found on the first
day of the week, called Sunday, engaged in any sports,
or in horse racing, cock fighting, or in any other manner,
disturbing any worshiping assembly, or private family,
or attending any public meeting, or public exhibition,
excepting for religious worship or instruction, or engaged
in any labor, except works of necessity, charity, or mercy,
shall be punished," etc.

Penal statutes are to be strictly construed and the
courts all uniformly so hold.   It is true, in some of the
states, this rule has been abrogated by statute, but in
New Mexico we have no statute authorizing us to depart
from the strict rule of the common law in this respect.
Hence we must give to the statute now under consid-
eration a strict construction, according to its letter, and
nothing must be regarded as being included within
it, that is not both within the letter and spirit of the
statute.   "And where a statute of this kind contains
such an ambiguity as to leave reasonable doubt of its
meaning, where it admits of two constructions, that which
operates in favor of life or liberty is to be preferred."
Lewis' Sutherland Statutory Construction, 2nd ed. sec.
520.   The above statute is peculiarly worded and from
our research we have been unable to find a similar statute
in any other state.   Its meaning and intent are not clear
and it is very ambiguous.   The Legislature of New Mex-

ico should enact a statute upon Sunday observance that would plainly express the prohibited acts, so that the people would be able to know, without construction by the courts, what it was intended to prohibit. Courts cannot enact laws and are limited simply to their construction and interpretation, and under well defined rules.

To sustain the judgment of the lower court, upon the first count of the information, we would be compelled to hold that the Legislature intended to prohibit all "sports" on the Sabbath day, however innocent or harmless they might be. Can it be that the Legislature, by the use of the word, intended to so limit and restrict the liberty of the people? To so hold would be to prevent members of a family from engaging in a game of croquet, tennis or golf, or other like · sports. In fact, would, instead of making Sunday a day of rest and relaxation from business and labor, and a day to be looked forward to with pleasure, cause the people to regard it as a day to be dreaded, for fear they might be haled into court and fined for infraction of the law. We think the law makers, by the use of the words "horse racing or cock fighting" pointed out the class of sports which they intended to prohibit, and that they intended to prohibit only such sport as tended to immorality. It is well known that horse racing and cock fighting, by reason of the fact that a purse is usually paid to the owner of the winner, and that gambling and betting sometimes attend such sports, are generally considered immoral. Ex parte Hull (Idaho) 110 Pac. 256.

In the case of State v. Prather, 79 Kansas, 513; 100 Pac. 57, the Supreme Court of Kansas, in discussing the question as to whether baseball was prohibited by a statute, which prohibited all "games" on the Sabbath day, said:

"In the broad sense in which the word is often used it includes baseball. Giving the statute this interpretation the statute applied to every contrivance or institution which falls within the general term. This construction would make the statute apply to every game of authors, whist, chess, checkers, backgammon and cribbage, even when played within the privacy of one's home, and

to croquet, basket ball, tennis and golf, whether played in public or private grounds. It hardly seems possible that it could have been the intention of the legislature to enact a provision so drastic in its terms as to make the playing of all games on Sunday misdemeanors without regard to their character." And the Supreme Court of Missouri, in the case Ex Parte Joseph Neet, 157, Mo. 527, in speaking of baseball, says:

"Baseball does not belong to the same class, kind, species or genus as horse racing, cock fighting, or card playing. It is to America what cricket is to England. It is a sport or athletic exercise, and is commonly called a game but it is not a gambling game or productive of immorality. In a qualified sense it is affected by chance, but it is primarily and properly a game of science, of physical skill, of trained endurance and of natural adaptability to athletic skill."

To hold that the word "sports," used in our statute was designed to prevent people from engaging in baseball on Sunday, would make the statute so drastic that it would prohibit all sports, however innocent or harmless they might be, and however much they might tend to make the Sabbath day a day of rest and relaxation from labor. As remarked by the court in Ex Parte Joseph Neet, supra., "Such a construction would have curtailed many of the pleasures of many of our people, without elevating them or improving their moral tone. Until the law-makers expressly provide for such sweeping changes in the lives and customs of our people, it is not proper for the courts by construction to impair their natural rights to enjoy these sports or amusements that are neither mala in se nor mala prohibita—neither immoral or hurtful to body or soul."

We therefore hold that baseball, so long as it is conducted and carried on in a harmless and proper manner, free from rowdyism, gambling and immorality, does not come within sports prohibited by the statute.

The second count of the information charges that the defendant "did unlawfully engage in and attend a public exhibition and a public meeting, to-wit, a game of

baseball, said meeting and exhibition not being for religious worship or instruction."

This charge is based upon that portion of the statute which prohibits "attending any public meeting or exhibition, except for religious worship or instruction." Even though baseball should be held to be a public meeting or exhibition, which we do not hold nor decide, as the question is not involved in this case, nor necessary to a decision, still it is apparent that this does not forbid engaging in a public exhibition or public meeting, but only makes it an offense to attend such public meeting or exhibition. The agreed statement of facts shows that the defendant engaged in the managing, promoting and playing the game. We are unable to see how in any proper and ordinary sense in which the word "attend" may be used, a person who performs at the exhibition or speaks in public meeting can be said to attend the exhibition or meeting. The ordinary meaning of this language is that the persons who go to any such exhibition or meeting, as spectators or auditors, are guilty of an offense which cannot extend to the performers themselves, and this defendant appears to have been a performer at the game of baseball. The correctness of this interpretation is conceded by the able attorney general and therefor it is not necessary for us to further discuss this branch of the case.

The third count of the information charges that the defendant "did engage in labor, to-wit: the managing, promoting and playing of a game of baseball, the same not being a work of necessity, charity or mercy." The learned judge of the court below held "that what was done by the defendant as described in the stipulation— constituting both physical exercise and remuneration therefor—constituted labor within the statute." We are unable to concur in this definition of labor, as used in the statute. Webster defines labor to be:

"Exertion of muscular strength, or bodily exertion which occasions weariness; particularly, the exertions of the limbs in occupations by which subsistence · is obtained; as in agriculture and manufactures, in distinction from

exertion of strength in play or amusements, which are denominated exercise, rather than labor." Physical exertion alone certainly does not constitute labor within the meaning of the statute, otherwise people would be precluded by statute from walking, engaging in any recreation, or doing any act, unless the same was a matter of necessity, charity or mercy; nor does the mere fact that remuneration is received for physical exertion, change the character of that exertion so as to make it labor, if it would not otherwise be so. If a man chops a cord of wood, we would all agree that that is labor, whether he receives any compensation for it or not. And on the other hand it must equally be true that recreation or amusement is not transformed into labor because the persons indulging in the recreation or amusement receives pay for so doing. This would be placing, we think, an unwarranted construction upon the statute. No one would contend that the action of a band, which plays in many of our cities and towns on Sunday, for the entertainment of the public, is engaged in labor, within the meaning of the statute, although the members receive compensation therefor; nor would it be contended that the statute extended to the case of a paid singer in a church choir, who sings for the entertainment of the congregation and for the benefit of religious worship and instruction, thereby attracting the attendance of persons who might not otherwise attend church.

The Supreme Court of Ohio, in the case of Bloom v. Richards, 2 Ohio State, p. 387, in construing the meaning of the word "labor," used in a Sunday statute, said, "The word 'labor' is usually employed to signify manual exertion of a toilsome nature." The legislature of the Territory, by the use of this word, certainly did not intend to use it in the enlarged sense, but was using a word commonly understood by the people to mean physical exertion, of a toilsome nature, indulged in by mankind to acquire a sustenance. The purpose of the statute was to set apart this day as a day of rest for the people, from the ordinary vocations pursued by them through the week. What could be more restful or helpful to the man who

spends his week in an office, or a close shop, than to en-- gage in an invigorating, clean and wholesome exercise, such as baseball on this day. Baseball· is essentially and naturally in the nature of amusement, both for the **6** participants and· spectators, and is far removed from the ordinary meaning of the word "labor."

For the reasons above stated, the judgment of the lower court is reversed and the cause remanded, with instruc- tions to the lower court to discharge the defendant.