(156 App. Div. 10.)

## PEOPLE v. MALONE.

(Supreme Court, Appellate Division, Second Department. March 28, 1913.)

1. DISTURBANCE OF PUBLIC ASSEMBLAGE (§ 1*)—"LAWFUL ASSEMBLY."

A political meeting, held under the auspices of the county general committee of a political party at which the issues of the presidential campaign are discussed, is a lawful assembly, within Penal Law (Consol. Laws 1909, c. 40) § 1470, providing that a person who, without authority of law, disturbs any assembly or meeting not unlawful in its character, is guilty of a misdemeanor.

[Ed. Note.—For other cases, see Disturbance of Public Assemblage, Cent. Dig. §§ 1–5; Dec. Dig. § 1.*]

2. DISTURBANCE OF PUBLIC ASSEMBLAGE (§ 1*)—"DISTURB."

The term "disturb," as used in Penal Law (Consol. Laws 1909, c. 40) § 1470, prohibiting the willful disturbance of any assembly or meeting, means to throw into disorder; to move from a state of rest or regular order; to interrupt; to throw out of course or order (citing 3 Words and Phrases Judicially Defined, p. 2139).

[Ed. Note.—For other cases, see Disturbance of Public Assemblage, Cent. Dig. §§ 1–5; Dec. Dig. § 1.*]

3. DISTURBANCE OF PUBLIC ASSEMBLAGE (§ 1*)—NATURE OF OFFENSE—"WILLFUL."

The term "willful," as used in Penal Law (Consol. Laws 1909, c. 40) § 1470, providing that a person who, without authority of law, willfully disturbs any assembly or meeting, shall be guilty of a misdemeanor, means that the disturbance was not due to accident or mistake, but was intentional and designed.

[Ed. Note.—For other cases, see Disturbance of Public Assemblage, Cent. Dig. §§ 1–5; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 8, pp, 7468–7481.]

4. DISTURBANCE OF PUBLIC ASSEMBLAGE (§ 1*)—NATURE OF OFFENSE—PERSISTENCE IN INTERRUPTING SPEAKER—"WILLFUL DISTURBANCE."

Defendant, a suffragette of education, attended a political meeting at which the candidate of the Democratic national convention for President for the ensuing election was to speak. During his address she rose from her seat and asked him to state his position on woman suffrage. The speaker declined to discuss the question as a state issue, and because he was only there to discuss national questions. She was requested by the chairman of the meeting to resume her seat; but she remained standing, made a repetition of her request, and addressed a further question to the speaker relative to the same subject. The meeting was thrown into an uproar, and accused was ejected and arrested. *Held* that, while her acts prior to her being requested to resume her seat were proper, her refusal to do so and her continuance to interrogate the speaker constituted a "willful disturbance" of the public assembly, in violation of Penal Law (Consol. Laws 1909, c. 40) § 1470.

[Ed. Note.—For other cases, see Disturbance of Public Assemblage, Cent. Dig. §§ 1–5; Dec. Dig. § 1.*]

Appeal from Court of Special Sessions of Kings County.

Maud Malone was convicted of disturbing an assembly, and she appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and STAPLETON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James P. Kohler, of Brooklyn, for appellant.

James C. Cropsey, Dist. Atty., of Brooklyn (Edward A. Freshman and Harry G. Anderson, Asst. Dist. Attys., both of New York City, on the brief), for the People.

JENKS, P. J. The appeal is from a judgment of conviction of the Court of Special Sessions for violation of section 1470 of the Penal Law (Consol. Laws 1909, c. 40). On the evening of October 19, 1912, and in the Academy of Music, in the borough of Brooklyn, there was a meeting held by the Kings county general Democratic committee as a political meeting, to be addressed by several selected speakers. Of such speakers one was the candidate of the Democratic national convention for President of the United States, to be voted for at the next ensuing election. There was a large assembly, and the defendant was of the audience, and was seated in the balcony of the hall. After the said candidate had spoken for some 15 minutes, the defendant stood forth in front of her seat and interrupted the speaker, calling him by name. Instantly there was uproar. It was stilled somewhat by the speaker, who inquired of the defendant:

"What is it, madam?"

Whereupon the defendant said (I take her own version):

"You have just been talking about monopolies, and what about woman's suffrage? The men have a monopoly of the suffrage."

The speaker answered that he was present to discuss national questions, not state questions, that he regarded the suffrage as a state question, and that he was present as the representative of the national Democratic party. The defendant then replied:

"I am speaking to you as an American."

The witnesses, including the defendant, all agree that the speaker thereupon said that he must decline to discuss the question on that occasion, and there is proof that he disclaimed discourtesy by his refusal, requested the defendant to resume her seat, and said that he must decline to be interrupted by any one at that stage. The chairman of the meeting testifies that he requested the defendant to resume her seat. But the defendant remained standing, made a repetition of the request, and addressed a further question to the speaker relative to the same subject. The tumult continued, and was not abated until after the defendant was ejected from the meeting. That tumult was so great as to throw the meeting into disorder and to prevent the speaker from continuance until after that ejection.

[1, 2] The said section 1470 of the Penal Law provides:

"A person who, without authority of law, willfully disturbs any assembly or meeting, not unlawful in its character, is guilty of a misdemeanor."

I think that the meeting was within the purview of this statute. See discussion by Shaw, C. J., in Commonwealth v. Porter, 1 Gray (Mass.) 476, 477, 478.

"To disturb" is "to throw into disorder; to move from a state of rest or regular order; to interrupt; to throw out of course or order." See

Stormonth's Dictionary; the Century Dictionary; Anderson's Law Dictionary; Words and Phrases Judicially Defined; State v. Stuth, 11 Wash. 423, 39 Pac. 665, citing 2 Bishop's Criminal Law, § 209.

Chief Justice Shaw also said in the same judgment that what shall constitute a disturbance cannot easily be brought within a definition applicable to all cases. It must depend on the nature and character of each particular kind of meeting and the purposes for which it is held, and much on the usage and practice governing such meetings; that each case presents a question of fact; and he adds:

"And although it may not be easy to define it beforehand, there is commonly no great difficulty in ascertaining what is a willful disturbance in a given case. It must be willful and designed, an act not done through accident or mistake."

I think that it cannot be said that the defendant disturbed the meeting at the beginning of this incident. Although the Scotch custom of heckling is not in vogue here, it appears from the record and is common knowledge that sometimes a speaker during his speech at a political meeting is interrogated by some auditor. And on this occasion the speaker was courteous to give way to the defendant, to hear her question, and to make answer; and the chairman was likewise courteous to halt the proceedings in accord with an implied consent of the speaker. If the incident from its inception was attended with tumult, that was the doing of the audience, in token of its disapproval.

But despite such disapproval, the defendant did not, in the eye of the law, disturb the meeting so long as her course was taken with the consents of the chairman and of the speaker who had the floor. But her offending was in her persistence after the speaker had made answer, had declined further discussion, had asked her to take her seat, had declined to permit further interruption, had continued to keep the floor, and had evinced his desire to continue his speech without further interruption, and in like persistence in disobedience of the chairman of the meeting and in disregard of his commands.

It must be borne in mind that the defendant did not seek to interrogate the speaker upon another subject, but persisted to press her inquiry upon the same topic. If the audience had remained still and silent, nevertheless the defendant would have disturbed the meeting when she refused to obey the chairman, and when she prevented the speaker by her attitude and her words from continuing his address after he had closed the incident. The meeting was called to hear Gov. Wilson and such other speakers as were announced and were introduced by the presiding officer, not to hear the defendant. Neither she nor any other person was invited to interrogate the speakers, or to suggest topics for their discussion, or to arrest the meeting until questions permitted by a speaker were disposed of by him in accordance with the ideas of the interlocutor.

Gov. Wilson had the floor, he yielded it only for a question which he answered with his reasons, and he then refused further discussion. Thereupon the defendant should have held her peace upon that subject, have acceded to the request of the speaker, and have obeyed the chairman. She was no tyro so far as political meetings are concerned, for she admits that she had been a frequent attendant thereof.

If at the outset the tumult and the uproar were not hers, but were of the audience, for which, as I have said, she was not at first responsible in the eye of the law, she certainly was responsible for the tumult and the uproar that attended her own disorder after the speaker and the chairman had closed the incident of her interrogation. Certainly no reasonable person could believe that the tumult, which began with the interruption and because of the interrupter, and which but rose and fell, and was not abated, would cease when the same person persisted in her course of defiance.

[3] I think, too, that the disturbance by the defendant was willful. For that qualification as used in the statute means that the disturbance was not due to accident or mistake, but was intentional and designed. Commonwealth v. Porter, supra; Harrison v. State, 37 Ala. 154–156; Williams v. State, 83 Ala. 68, 3 South. 743. The defendant is apparently an intelligent woman of excellent antecedents and of good social position.

[4] After she had testified as to her familiarity with political meetings and as to her frequent utterance at them, she was asked the following questions:

"Q. Did you not see that the Governor had refused, and that by persisting and remaining standing you were disturbing the meeting and preventing its continuance, in face of the fact that the speaker had refused to discuss it any further with you? Did you not see that? A. If I might explain, I asked the question to get an answer either one way or the other, and just refusing to discuss the question is not an answer. Q. Did you feel that you had a right, notwithstanding the refusal of the speaker to answer your question directly, to remain there, and notwithstanding the protest of the chairman of the meeting to continue to stand in your position insisting upon it being answered? A. There were a great many people in the meeting that wanted me to stand and get an answer, and I wanted an answer either way. Q. And it was your determination to stay there until you got one, whether he liked it or not, is that it? A. Well, I asked the Governor then why he declined to answer, and then I was immediately dragged out."

The defendant avoided direct answers. But I find, not in the avoidance alone, but in the answers as given, indication that the intent of the defendant was to set the chairman and the speaker at defiance until she was satisfied.

She would explain or would extenuate her conduct by the statement that after she asked the Governor why he declined to answer she was immediately "dragged out." But, even so, she was out of order and a disturber as soon as the speaker had refused to discuss the question any further and the chairman had requested her to cease and to sit down. She testifies that she did not hear the chairman tell her to resume her seat. Even if the trial court believed her, that circumstance could not acquit her; for she testifies that the speaker, after his answer to her first question, answered her second question by a declination to discuss the subject. She admits that she persisted to question him further upon the same subject, and that she theretofore had heard the chairman say that he would not have the meeting interrupted, and that he would have the meeting come to order.

We have no concern with the wisdom of the proceedings which led to the defendant's arrest, arraignment, and trial. We are told in elo-

quent periods that the conduct of the defendant was in furtherance of a cause in which she believes. I do not doubt her belief. Neither do I doubt that the most militant suffragettes who are producing a reign of domestic terror in England, some of whose actions almost rival those of the petroleuses of the Parisian Commune of 1871, may say the same in all conscience.

Thoughtful men and women recognize that the principle of woman suffrage is supported by cogent arguments. The arguments should receive due consideration, and the agitation of the subject should not be stilled by any oppression. But there is no argument in violations of law, and agitation in forms that fall foul of the penal law must be suppressed. If the courts overlook violations of such law for the sake of such propagandism of any cause as is in disobedience of such law, the courts fall into contempt and the lawless take heart.

What this defendant did is but a little thing in itself, but it is not venial in the eye of the law. If the law should blink at little things which are unlawful, irresponsible enthusiasts may be encouraged to commit grave offenses. In the oft-quoted maxim, "This is a government of laws, not men," "men" includes women. There is no question of free speech or of oppression involved in this case, and it does not bulk large with incidental questions of liberty. There is but the simple question whether the defendant—a person—willfully disturbed a meeting in violation of the statute.

The judgment must be affirmed. All concur.