493 P.2d 768

STATE of New Mexico, Plaintiff-Appellee,

v.

William B. ORZEN, Allen F. Cooper,
Defendants-Appellants.

No. 729.

Court of Appeals of New Mexico.

Jan. 14, 1972.

Charles Driscoll, Albuquerque, for William B. Orzen.

Michael Norwood, Richard Bosson, Albuquerque, for Allen F. Cooper.

David L. Norvell, Atty. Gen., Ray Shollenbarger, Special Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

This appeal is concerned with an incident which occurred at the basketball arena of the University of New Mexico in February, 1970. A basketball game was scheduled between the University and Brigham Young University. During the presentation of the colors and the playing of the national anthem various objects were thrown toward the playing surface of the basketball court. Some of the objects hit spectators, some landed on the court. The start of the game was delayed 35 to 40 minutes while the surface of the court was restored to playing condition.

Orzen was identified as having thrown a paper cup containing either ice, or water or beads, and as having thrown a balloon filled with a liquid. Cooper was identified as having thrown a balloon. Both were convicted of violating § 40A–13–1(B), N.M.S.A.1953 (Repl.Vol. 6). Their appeal raises issues concerning: (1) the applicability of the statute under which they were convicted; (2) the meaning of "disturb"; (3) evidence of a disturbance; (4) extrajudicial identification and (5) the use of a motion picture film by the State during closing argument.

Section 40A–13–1(B), supra, reads:

"Disturbing lawful assembly consists of:

" . . . .

"B. disturbing any meeting of the people assembled for any legal object."

*Applicability of the statute.*

Two contentions of defendants are that the statutory phrase "meeting of the people" is inapplicable to their conduct at the basketball arena. These two contentions concern legislative history and the meaning of "meeting of the people." A third, and alternative contention, is that the statutory phrase is unconstitutionally vague.

Legislative history.

Prior to the enactment of the Criminal Code in 1963 (see § 40A–1–1, N.M.S.A. 1953, Repl.Vol. 6), § 40–12–6, N.M.S.A. 1953 made it unlawful to " . . . disturb any meeting of the people assembled for any legal object. . . . " In addition, § 40–12–7, N.M.S.A.1953, among other things, made it " . . . unlawful for any person wilfully to disturb, interrupt, or in any manner interfere with any . . . lawful assembly for the purpose of . . . sport or contest. . . . " Sections 40–12–6 and 40–12–7, supra, were repealed in the statute enacting the Criminal Code. See Laws 1963, ch. 303, § 30–1.

Defendants assert that § 40A–13–1(B), supra, (the statute under which they were convicted) was a re-enactment of former § 40–12–6, supra, but that former § 40–12–7, supra, was not re-enacted. Since § 49–12–7, supra, applied specifically to sporting events they claim that § 40A–13–1(B), supra, as a re-enacted statute, cannot be extended to a sporting event and, therefore, the conduct formerly made unlawful by § 40–12–7, supra, can only be prosecuted under the " . . . general disorderly conduct provision of the Code. . . . " The present disorderly conduct statute is § 40A–20–1, N.M.S.A.1953 (Repl.Vol. 6).

The essence of this argument is that the Legislature did not intend that § 40A–13–1(B), supra, should apply to conduct formerly covered by § 40–12–7, supra. The Report of Criminal Law Study Interim Committee, 1961–1962, shows that defendants' argument is incorrect. The Report recommended the enactment of § 40A–13–1, supra, as a revision of three then existing laws, two of which were §§

40–12–6 and 40–12–7, supra, upon which defendants rely. The Report negates the claim that conduct prohibited by § 40–12–7, supra, was not to be prohibited by the new § 40A–13–1, supra.

The argument that conduct prohibited by § 40–12–7, supra, is now only covered by the disorderly conduct statute, § 40A–20–1, supra, is also negated by the Report. The Committee recommended the enactment of § 40A–20–1, supra, as a revision of two other then existing laws, neither of which were § 40–12–7, supra. The recommendations of the Committee as to the sections referred to herein were enacted into law without change.

The contention that the legislative history shows that § 40A–13–1(B), supra, is inapplicable to defendants' conduct is without merit.

Meeting of the people.

Defendants assert that the people present at the arena at the time of the incident with which this appeal is concerned were an *assembly* of people but that this assembly was not a *meeting of the people*. They contend that any grouping of people together is an assembly but that a meeting is an assembly for the purpose of discussing and acting on matters in which the group has a common interest. According to defendants, " . . . it is an essential activity of . . . [a meeting] that its members relate to each other, communicate with each other, 'deal' with each other, even *share* silence together. . . . " Defendants state: " . . . Spectators do not come to a basketball game as a 'meeting of the people.' They do not come to the arena to deal with each other. What intercommunication there may be is happenstance and not essential and does not involve the group as a whole. The spectators at a basketball game are an *assembly* and not a *meeting*."

The statute does not define "meeting." We must, then, ascertain the legislative intent in using that word. The legislative intent is to be determined primarily by the language in the Act. In ad-

dition, the words used are to be given their ordinary meaning unless a different intent is clearly indicated. Albuquerque Nat. Bank v. Commissioner of Revenue, 82 N. M. 232, 478 P.2d 560 (Ct.App.1970). Applying the ordinary meaning, there is no ambiguity in the statute.

The language used is "any meeting of the people assembled for any lawful object." One of the definitions of "meeting," when used as a noun, in Webster's Third New International Dictionary (1966) is "a gathering for business, social or other purposes." Another definition is: "a horse or dog racing session extending for a stated term of days at one track." The people assembled to view a basketball game was a "meeting" within these definitions. Compare Territory v. Davenport, 17 N.M. 214, 124 P. 795, 41 L.R.A.,N.S., 407 (1912).

The foregoing answers defendants' argument that the spectators present at the arena could not be a "meeting." The concept of "meeting" can also be viewed in connection with the players—the participants in the athletic contest. The players certainly act on a matter of common interest—the game; they deal with one another; they communicate with each other. Under defendants' asserted definition of "meeting" the players were a meeting of people assembled for a lawful object.

Defendants' conduct at the arena occurred at a "meeting of the people" within the meaning of § 40A–13–1(B), supra.

Asserted vagueness.

■ Defendants assert that § 40A–13–1(B), supra, violates due process because the meaning of "meeting" is so vague that "men may not know what to avoid." Due process is violated if a statute which forbids the doing of an act is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. · State v. Minns, 80 N.M. 269, 454 P.2d 355 (Ct. App.1969); see Balizer v. Shaver, 82 N.M. 347, 481 P.2d 709 (Ct.App.1971). In determining the question of unconstitutional vagueness, the statute as a whole must be considered. State v. Ferris, 80 N.M. 663, 459 P.2d 462 (Ct.App.1969).

■ Persons of common intelligence do not have to guess at the meaning of § 40A–13–1(B), supra, which forbids the disturbance of *any* meeting of the people assembled for *any* legal object. It forbids the disturbance of any gathering for business, social or other purposes if the object of the gathering is legal. The language used conveys a sufficiently definite warning of the proscribed conduct. State v. Ferris, supra; compare State v. Covens, 83 N.M. 175, 489 P.2d 888 (Ct.App.1971).

*Meaning of "disturb."*

Defendants claim the trial court erred in its definition of "disturb" and there is no substantial evidence that the spectators at the arena were disturbed. If a disturbance is found to have occurred, defendants assert there is no substantial evidence that either defendant was responsible for the disturbance.

■ The trial court instructed the jury " . . . that the term 'disturb' means to throw into disorder or confusion, to interrupt." This accords with the ordinary meaning of the word. Webster's Third New International Dictionary (1966) defines "disturb" as a verb to mean: "to interfere with (as by hindering or causing to turn from a course or to stop)" and "to throw into confusion or disorder." "Disturbance" as a noun, is defined as an "interruption" or "commotion." Since the statutory word "disturbing" is not defined, its ordinary meaning was properly applied by the trial court. Albuquerque Nat. Bank v. Commissioner of Revenue, supra.

■ The basketball game was scheduled to begin at 8:05 p. m. It did not begin until 35 to 40 minutes later. The delay was occasioned by the necessity of removing debris and liquids from the playing surface. This is substantial evidence that the game was hindered, turned from its course, interrupted. Thus, both the meeting of the players and the meeting of the spectators to view the game were interrupted.

State v. Mancini, 91 Vt. 507, 101 A. 581 (1917) states:

"Speaking generally, the rule applicable to disturbances of public assemblies is that any conduct which, being contrary to the usages of the particular sort of meeting and class of persons assembled, interferes with its due progress, or is annoying to the assembly in whole or in part, is a disturbance." (citation omitted)

See also State v. McNair, 178 Neb. 763, 135 N.W.2d 463 (1965); compare People v. Malone, 156 App.Div. 10, 141 N.Y.S. 149 (1913). There is substantial evidence that the meeting was disturbed.

### Evidence of a disturbance.

 Defendants contend there is no evidence that any acts of defendants caused the disturbance. Their position is there is no evidence that the objects which defendants threw landed on the playing surface of the basketball court. Assuming, but not deciding, that this is true, the answer to this contention is that the defendants aided and abetted those who threw far enough so that the objects thrown landed on the playing surface of the court.

 For a definition of aiding and abetting see State v. Ochoa, 41 N.M. 589, 72 P.2d 609 (1937). There is evidence that the defendants threw objects when others also threw them, and also evidence from which community of intent can be reasonably inferred. Further, the issue of aiding and abetting was submitted to the jury and the only objection of these defendants was on the ground that the evidence was insufficient to submit that issue to the jury. We have held the evidence was sufficient. The claim on appeal is that aiding and abetting was not an issue in the case. This is incorrect. Although charged with disturbing the meeting, defendants could be convicted of aiding and abetting that disturbance. Sections 40A–1–14 and 41–6–34, N.M.S.A.1953 (Repl.Vol. 6); State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966),

cert. denied, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967).

### Extra-judicial identification.

Five witnesses testified that either Orzen or Cooper or both threw objects. Before any identification testimony was received from each of these witnesses, the trial court was requested to permit the witness to be questioned ". . . outside the presence of the jury with respect to anything helping him or assisting him or relating to that event, identification that took place between the time of the game and today."

When defendants made their request to voir dire the witnesses, no claim was made that there had been any extra-judicial identification. What defendants sought was a "fishing expedition." See State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct. App.1970). At this point no issue as to an extra-judicial identification had been raised. Nor was an issue of extra-judicial identification ever raised as to three of the five witnesses. These three concluded their testimony without being questioned as to any identification of defendants other than their observations at the arena and subsequently learning the defendants' names. State v. Turner, supra.

During the examination of two of the witnesses it was ascertained that they had seen a motion picture film taken during the incident at the arena. One witness had seen the film about two weeks after the incident occurred. Both had viewed the film during the course of the trial, but after it had been introduced into evidence and shown to the jury. Assuming (but not deciding) that this evidence raised an issue concerning extra-judicial identification by the two witnesses, defendants conceded at oral argument that there is nothing to indicate that the viewing of the film had any effect on the in-court identification made by these witnesses. Compare State v. Gilliam, (Ct.App.), 83 N.M. 325, 491 P.2d 1080, decided November 19, 1971.

■ The issue under this point is whether a defendant has the right to explore for the possibilities of an extra-judicial identification. Absent some indication of an improper extra-judicial identification, it was within the discretion of the trial court to permit the trial to be interrupted to allow defendant to voir dire as to the possibilities of such an identification. Compare State v. Manlove, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968) as to voir dire examination as to competency of a witness, and see State v. Turner, supra, as to defendants' "right" to a "fishing expedition."

*Use of motion picture film during closing argument.*

During closing argument the State reran the motion picture film previously admitted into evidence. In doing so it used a screen different from the one used when the film was originally viewed by the jury. In showing the film during argument the prosecutor, at times, slowed the film, stopped it, reversed it and made comments concerning what was shown. Defendants assert this was prejudicial misconduct on the part of the prosecutor. They claim the trial court erred in denying their motion for a mistrial. We disagree.

■ The film, admitted into evidence without objection, was demonstrative evidence. See Paradis, The Celluloid Witness, 37 U. of Colo.Law Review 235, at 259 (1965). The prosecutor's comments were no more than comments directing the jury's attention to what the exhibit showed. State v. Blancett, 24 N.M. 433, 174 P. 207 (1918), appeal dismissed 252 U. S. 574, 40 S.Ct. 395, 64 L.Ed. 723 (1920). The comments were based on the evidence and were thus permissible. State v. Santillanes, 81 N.M. 185, 464 P.2d 915 (Ct.App. 1970).

■ The method in which the film was shown was also a comment on the evidence by the prosecutor. Counsel are allowed a reasonable amount of latitude in their closing remarks to the jury. State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969).

The trial court has wide discretion in dealing with and controlling counsel's jury arguments. If no abuse of discretion or prejudice is shown, then there is no error. State v. Pace, supra; see Chavez v. Atchison, Topeka and Santa Fe Railway Co., 77 N.M. 346, 423 P.2d 34 (1967). Here, there is no showing of an abuse of discretion of prejudice to defendants.

The judgment and sentence is affirmed as to each of the defendants with the following two comments: (1) Notice of Appeal was filed in the District Court on July 2, 1970 yet the transcript was not filed in this Court until June 30, 1971; (2) although the trial judge, by order, directed that the District Court Clerk forward all exhibits to the Clerk of this Court, no exhibits were received. Since neither the briefs nor oral arguments relied on the exhibits, the only consequence is that there are no exihbits to be returned by our Clerk upon entry of final order in this cause.

It is so ordered.

SUTIN and COWAN, JJ., concur.