525 P.2d 374 (1974)
80 N.M. 447
Joseph C. McDANIEL, Petitioner-Appellee and Cross-Appellant,
v.
NEW MEXICO BOARD OF MEDICAL EXAMINERS, Respondent-Appellant and Cross-Appellee.
No. 9798.
Supreme Court of New Mexico.
August 2, 1974.
Rehearing Denied August 19, 1974.
Howard F. Houk, Albuquerque, for respondent-appellant.
George P. Jones III, Albuquerque, for petitioner-appellee.

*375 OPINION
STEPHENSON, Justice.
This appeal arises out of a judgment entered on an appeal by appellee to the District Court of Bernalillo County from two decisions and an order of the Board of Medical Examiners, (the Board), revoking the license of the appellee to practice medicine in New Mexico. The lower court, after considering the record of the proceedings before the Board, entered its judgment reversing the decisions and order of the Board. The Board appeals.
In July of 1970, pursuant to a Notice of Contemplated Action filed by the Board against the appellee under the provisions of the Uniform Licensing Act (§§ 67-26-1 to 67-26-31, N.M.S.A. 1953), the appellee appeared before the Board and admitted that he had illegally and falsely prescribed, for the alleged use of another, the dangerous and habit-forming drug Demerol, when in truth and in fact the prescriptions were intended for his own use. He also admitted that he had habitually and excessively used Demerol; whereupon the Board found the appellee guilty of unprofessional conduct, entered its decision revoking his license to practice medicine, reinstated said license, and placed him on probation upon certain terms and conditions included among which were:
"a. Respondent [appellee] shall at all times comply with all of the laws of the United States, the State of New Mexico and its political subdivisions, and the rules and regulations and orders of the Board of Medical Examiners.
"c. During the period of this indefinite probation, respondent shall continue under psychiatric observation and treatment of Warren T. Brown., M.D., or some other psychiatrist acceptable to the Board, and except as authorized by said psychiatrist, he shall not take or have in his possession any dangerous drugs. * * *"
Thereafter, pursuant to an Order to Show Cause filed by the Board as to why appellee's license to practice medicine should not be revoked because of his having violated the terms of his probation, a hearing was held. In August 1972, the Board made findings of fact and conclusions of law and entered its decision, finding appellee to have violated the terms and conditions of his probation, and entered an order revoking appellee's license to practice medicine.
Appellee appealed to the District Court of Bernalillo County. The district court ultimately entered a judgment reversing the decisions and order of the Board, concluding as a matter of law that substantial rights of the appellee had been prejudiced because the Board's findings, inferences, conclusions, and decisions were unsupported by substantial evidence on the entire record and were arbitrary.
The court based its reversal of the Board's decision on the lack of sufficient evidence upon which to establish its findings:
(1) that the use of Ritalin was dangerous in the manner form prescribed, or taken, by Dr. McDaniel,
(2) that classification by statute, or otherwise, of Ritalin as a dangerous drug was known or should have been known to Dr. McDaniel,
(3) that Dr. McDaniel violated any supervisory instructions of Dr. Brown.
This appeal followed.
The court below in its review of the Board's actions was governed by § 67-26-20, N.M.S.A. 1953. The first paragraph of that statute provides in part:
"Scope of Review.  Upon the review of any board decision under the Uniform Licensing Act * * *. The court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: in violation of constitutional provisions; or in excess of the *376 statutory authority or jurisdiction of the board; or made upon unlawful procedure; or affected by other error or law; or unsupported by substantial evidence on the entire record as submitted; or arbitrary or capricious."
The court may not substitute its judgment for that of the board. In Llano, Inc. v. Southern Union Gas Company, 75 N.M. 7, 399 P.2d 646 (1964) it is stated:
"This court has consistently held that on appeals from administrative bodies the questions to be answered by the court are questions of law and are restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence and, generally, whether the action of the administrative body was within the scope of its authority. The district court may not substitute its judgment for that of the administrative body."
In Moyston v. New Mexico Public Service Commission, 76 N.M. 146, 412 P.2d 840 (1966), this court observed:
"The power of the trial court to review and overturn an administrative body's decision is stated in Ferguson-Steere Motor Co. v. State Corporation Commission, 63 N.M. 137, 314 P.2d 894:
`* * * It is well settled in this state that it is not the province of the trial court to re-try a case brought before it on appeal from an administrative body or agency or to substitute its judgment for that of the agency, but the trial court is limited to a determination of whether the administrative agency's action was legal or reasonable. If the trial court did substitute its judgment and discretion for that of the Commission, the trial court erred and its judgment must be reversed. On the other hand, the courts are vested with the power and authority to set aside an order of such agency if it is unreasonable, unlawful, arbitrary, capricious, or not supported by evidence. * * *'"
To the same effect also see Seidenberg v. New Mexico Board of Medical Examiners, 80 N.M. 135, 452 P.2d 469 (1969); Hardin v. State Tax Commission, 78 N.M. 477, 432 P.2d 833 (1967); S.I.C. Finance-Loans of Menaul, Inc. v. Upton, 75 N.M. 780, 411 P.2d 755 (1966); Ingram v. Malone Farms, Inc., 72 N.M. 256, 382 P.2d 981 (1963); Continental Oil Co. v. Oil Conservation Com'n, 70 N.M. 310, 373 P.2d 809 (1962); Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449 (1960).
As to what constitutes "arbitrary and capricious action" by an administrative board, the case of Smith v. Hollenbeck, 48 Wash.2d 461, 294 P.2d 921 (1956) states:
"Arbitrary and capricious action on the part of an administrative agency has been defined as willful and unreasonable action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached."
Also to be taken into account is § 67-26-11, N.M.S.A. 1953 which provides in part:
"* * * Boards may utilize their experience, technical competence and specialized knowledge in the evaluation of evidence presented to them. * * *"
The Board naturally contends that the district court erred in holding its decision to be unsupported by substantial evidence. There is really no dispute about the appellee's actions. These matters were largely admitted. In this respect the Board found:
"That the respondent, Joseph C. McDaniel, M.D., * * * for a period of time, from February 7, 1972, up through July 20, 1972, * * * illegally and falsely prescribed for the alleged use of Mrs. Elizabeth Burns, or Mrs. E. Burns, 1821 Sue Drive, Birmingham, Alabama, approximately 1410 Ritalin 20-mg. tablets, when in truth and in fact the prescription for said * * * Schedule II drug Ritalin was not prescribed *377 for the sole use of Mrs. Burns, in that the respondent, according to his own admission, kept for his own use approximately 500 of the said Ritalin tablets without the knowledge or consent of his psychiatrist, Warren T. Brown, M.D., and without said psychiatrist's having authorized or prescribed said * * * drug Ritalin for the personal use of the respondent.
In essence, the argument centers on whether there was substantial evidence that Ritalin is a "dangerous drug." Indeed, under the quoted terms of appellee's probation and the undisputed evidence bearing upon appellee's actions, this is the question upon which the issues of this appeal turn.
The original hearing dealt to some degree with the nature and characteristics of Ritalin, which seems to be a proprietary name for menthylphenidate. After entry of the Board's first decision, the case was remanded to the Board at the behest of appellee for the purpose, inter alia, of permitting "evidence as to any narcotic or dangerous qualities of the drug Ritalin." Following that hearing, the Board affirmed its prior decision and, as to Ritalin, found:
"That the drug Ritalin is a dangerous drug, in that its use may result in psychological or physical dependence. While the taking of said drug does elevate moods, withdrawal from the drug, once dependence is established, can be difficult and can be accompanied by severe depression. The drug Ritalin is available only on a prescription by a doctor duly registered and authorized to write such a prescription under the law and regulations of the Federal Bureau of Narcotics and Dangerous Drugs.
"The Board further finds that said respondent was not authorized to write prescriptions for the dangerous drug Ritalin, it being designated as a Schedule II drug under the Controlled Substances Act of both Federal and state governments."
We will not repeat our oft-stated criteria for determining whether a finding is supported by substantial evidence. For a statement of the rule in an opinion upon an appeal from the actions of an administrative body, see Rinker v. State Corporation Commission, 84 N.M. 626, 506 P.2d 783 (1973). Upon reading the entire record, we are of the opinion that the Board's finding that Ritalin is a dangerous drug was supported by substantial evidence. The resolution of that issue presents a close question, but confidence in the correctness of our view is bolstered by the portion of § 67-26-11 that we have quoted. The board is made up of "* * * five [5] reputable physicians of known ability, who are graduates of medical colleges in good standing, * * *, and have been registered practitioners in, * * *, New Mexico for a period of five [5] years * * *." § 67-5-1, N.M.S.A. 1953 (1973 Supp.).
As to administrative proceedings generally, there seems to be a broadly held view that no decision of such boards ought to be final until a court has placed its stamp of approval thereon. However faulty this premise may be, it results in a considerable volume of appeals from administrative decisions. In an increasingly technological society courts are frequently called upon to resolve issues relating to subjects which are scientific or technical, or involve occupations, professions or businesses in which competence requires education, training or experience. Courts are usually ill-equipped to deal with such problems and may properly give special weight and credence to findings concerning technical or scientific matters by administrative bodies whose members, by education, training or experience, are especially qualified and are functioning within the perimeters of their expertise. Legislative approval of such treatment of the findings of boards such as we have described is implicit in § 67-26-11. See Universal Camera *378 Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Cooley's Foundation v. Legalized Games Com., 78 N.J. Super. 128, 187 A.2d 731 (1963). Cf. National Labor Relations Board v. Coca Cola Bottling Co., 350 U.S. 264, 76 S.Ct. 383, 100 L.Ed. 285 (1956). The members of the Board are better qualified than this court to decide whether Ritalin is a dangerous drug.
In a cross-appeal, appellee points out that the Board's original action of July, 1970, in concluding that appellee was guilty of "conduct unbecoming in a person licensed to practice medicine" and "detrimental to the best interests of the public", was obviously predicated upon § 67-5-9, subd. B. (17), N.M.S.A. 1953 (1973 Supp.) which is couched in identical language. He asserts that the statute is void as being violative of the Due Process Clauses of the United States and New Mexico Constitutions because of its vagueness.
It is probably sufficient to point out that we are not, in this appeal, concerned with the validity of the original decision revoking appellee's license. The time for an appeal from that decision is long past. § 67-26-17, N.M.S.A. 1953. Rather, the issue here centers on the validity of the Board's revocation of appellee's probation. However, we consider it appropriate to deal with the argument on its merits.
A number of opinions have considered the general standards laid down in § 67-5-9, subd. B. (17) in comparable general statutory provisions applying to other occupations or professions. See Young v. Board of Pharmacy, 81 N.M. 5, 462 P.2d 139 (1969); Willoughby v. Board of Veterinary Examiners, 82 N.M. 443, 483 P.2d 498 (1971). No attack appears to have been made on the language of these comparable statutes setting up professional standards in general terms.
Appellee places great reliance on Levy v. Parker, 478 F.2d 772 (3rd Cir.1972). Dr. Levy, an army physician, had been convicted, inter alia, of violations of Art. 133 ("conduct unbecoming an officer and gentlemen") and Art. 134 (which proscribes, inter alia, "all disorders and neglects to the prejudice of good order and discipline in the armed forces") of the Uniform Code of Military Justice. He had publicly urged negro enlisted men to refuse to obey orders to go to Vietnam and referred to Special Forces personnel as "liars and thieves", "killers of peasants" and "murderers of women and children." After being denied relief from his conviction in the district court, the Court of Appeals held Sections 133 and 134 void for vagueness under the Due Process Clause of the Fifth Amendment and overbroad in violation of the First Amendment.
But appellee has suffered a stroke of ill-fortune. Following submission of this appeal, the United States Supreme Court reversed the Court of Appeals. Parker v. Levy, ___ U.S. ___, 94 S.Ct. 2547, 41 L.Ed.2d ___ (1974). The Supreme Court stated that:
"This Court has on more than one occasion invalidated statutes under the Due Process Clause of the Fifth or Fourteenth Amendments because they contained no standard whatever by which criminality could be ascertained, and the doctrine of these cases has subsequently acquired the shorthand description of `void for vagueness'. Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). In these cases, the criminal provision is vague `not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)."
Justice Rehnquist, speaking for the majority, noted the distinction between military and civilian society and said the provisions of the military *379 code under question must be judged according to the special traditions, duties and experiences of military life. While we do not equate the military with the medical profession, it is nevertheless true that the latter, in contrast with ordinary laymen, is a separate society in the sense of its specialized professional knowledge, its traditions and standards of ethics, and its development of self-regulatory rules and procedures. The same is true of other professions and occupations such as law and the judiciary. The rationale is similar:
On this basis the Supreme Court held in Levy, supra:
"For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter. But each of these differentiations relate to how strict a test of vagueness shall be applied in judging a particular criminal statute. None of them suggests that one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to challenge it for vagueness."
See also Willoughby v. Board of Veterinary Examiners, supra, and In re Mintz, 233 Or. 441, 378 P.2d 945 (1963). We hold that § 67-5-9, subd. B. (17) is not void for vagueness.
Appellee makes the same contention with respect to the conditions of probation, claiming that the phrase "any dangerous drugs" is so vague that the probation conditions are void under the Due Process and Equal Protection Clauses of the Constitution.
Here again, as in Levy, the inquiry is not whether the language as applied to other conduct or facts is uncertain, but whether appellee had fair notice from the language that his conduct was proscribed.
Gauged by these criteria, appellee's protestations that § 67-5-9, subd. B. (17) and the terms of the probation gave him "no guidance whatsoever" ring utterly hollow in this factual setting. His conduct in prescribing the drug Ritalin, in the manner in which he did prescribe it, could lead to the conclusion that he knew that under the terms and conditions of his probation he should not have prescribed the drug Ritalin for the alleged use of another and then divert some of it for his own use. This act in and of itself indicates knowledge on the part of appellee that he was doing something wrong. He surreptitiously procured the drug without the knowledge, acquiescence or consent of his psychiatrist, in direct violation of the terms of his probation. The Board was richly justified in concluding that there had been a conscious violation of the terms of the probation. This is particularly true since appellee had used an identical technique in regard to Demerol, viz.: prescribing for another and diverting to his own use, which was the source of his original difficulties. Under the facts here, the terms of probation were not unconstitutionally vague.
Appellee's excellent brief on cross-appeal advances nine other grounds for relief centering mainly upon procedural questions arising under the Uniform Licensing Act. Able counsel for both parties have exhaustively and persuasively briefed those points. We have carefully considered each of them and conclude that none require granting the relief sought by appellee. To discuss each of them would unduly lengthen this opinion to no useful purpose.
The judgment of the trial court is reversed. The decisions and order of the Board are reinstated and are to be given effect. The case is remanded to the District Court of Bernalillo County for further proceedings consistent with this opinion.
It is so ordered.
*380 OMAN and MONTOYA, JJ., concur.
McMANUS, Chief Justice (dissenting).
The Board placed appellee on probation upon the following conditions:
"(a) Respondent [appellee] shall at all times comply with all of the laws of the United States, the State of New Mexico, and its political subdivisions, and the rules and regulations and orders of the Board of Medical Examiners.
* * *
"(c) During the period of this indefinite probation respondent shall continue under psychiatric observation and treatment of Warren T. Brown, M.D., or some other psychiatrist acceptable to the Board, and except as authorized by said psychiatrist, he shall not take or have in his possession any dangerous drugs. * * *" (Emphasis added.)
It might be noted at this point that the latter term implies that by not being able to have dangerous drugs in his possession, appellee could not even prescribe such drugs to his patients.
On August 3, 1972, a state drug inspector took a statement from appellee, wherein appellee admitted that he was personally using the drug, Ritalin (methylphenidate), without authorization from his psychiatrist. Using this statement as a basis therefor, the Board served an order to show cause on appellee to explain why the Board should not find that appellee had violated the terms of his probation and, as well, why appellee should not have his license to practice medicine revoked. On August 14, 1972, pursuant to said order to show cause, a hearing was had before the Board. In defense of his conduct, appellee insisted that he did not know what the term "dangerous drugs" meant. On August 16, 1972 the Board made findings of fact and conclusions of law and held that appellee had violated the conditions of his probation. The Board then entered an order revoking appellee's license to practice medicine in New Mexico. Appellee perfected an appeal to the district court, which court, on October 13, 1972, entered an order remanding the case to the Board for the following purposes only:
"(a) To permit evidence as to any narcotic or dangerous qualities of the drug Ritalin.
"(b) To permit Petitioner (appellee) to call Dr. Warren Brown as a witness.
"(c) To make available to Petitioner at his expense to transcript of all proceedings had before the Board and correspondence with Dr. Brown and Dr. McDaniel."
On November 18, 1972 another hearing was had before the Board and on February 15, 1973 the Board affirmed its previous decision of August 16, 1972. Thereafter, on May 25, 1973, the district court entered a judgment pursuant to § 67-26-20, N.M.S.A. 1953 (Repl.Vol. 10, pt. 1, 1961), reversing the decisions and orders of the Board revoking appellee's license to practice medicine on the basis that substantial rights of appellee had been prejudiced because the Board's decision was unsupported by substantial evidence and was arbitrary.
Appellant claims that the trial court substituted its judgment for that of the Board and the court's decision should therefore be reversed. As support for this contention, appellant cites Ferguson-Steere Motor Co. v. State Corp. Com'n, 63 N.M. 137, 142, 314 P.2d 894, 897 (1957), which stated:
"* * * It is well settled in this state that it is not the province of the trial court to re-try a case brought before it on appeal from an administrative body or agency or to substitute its judgment for that of the agency, but the trial court is limited to a determination of whether the administrative agency's action was legal or reasonable. * * * On the other hand, the courts are vested with the power and authority to set aside an order of such agency it it is unreasonable, unlawful, arbitrary, capricious, or not supported by evidence. * * *" (Citations omitted and emphasis supplied.)
*381 I agree with this rule and must therefore determine if the court's ruling was truly based on one of the above-mentioned exceptions. In other words, if the term "dangerous drugs" is too indefinite, the probation term in question is unreasonable and void for vagueness. This point is dispositive of the case, in my opinion. In essence, all of this boils down to one simple issue: Did the Board's probation terms give appellee a sufficient indication of what drugs he could or could not use?
In determining if the probation term is too vague, the general rule on statutory vagueness is: "Due process is violated if a statute which forbids the doing of an act is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. * * *" State v. Orzen, 83 N.M. 458, 461, 493 P.2d 768, 771 (1972). This same rule can be applied to administrative orders because "in order to be valid, binding and enforcible the [administrative] order must be reasonably definite and certain in its terms and requirements," thus to inform the parties as to what they are required to do. Seward v. D. & R.G., 17 N.M. 577, 586, 131 P. 980, 990 (1913).
Furthermore, the right to practice a profession is a property right, and legislation governing revocation of that right is penal in nature and should be strictly construed. Amador v. New Mexico State Board of Education, 80 N.M. 336, 455 P.2d 840 (1969). This is analogous to the rule given for the interpretation for criminal statutes, i.e., that penal statutes must be strictly construed. See State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969). Therefore, rules which apply to criminal probation cases should likewise apply to license revocation cases. State v. Martinez, 84 N.M. 295, 296, 502 P.2d 320, 321 (Ct.App. 1972), in discussing the revocation of a criminal probation order, stated:
"The trial court had authority to revoke defendant's probation * * *. To do so, a violation of probation must be established. * * * In determining whether there is a violation, we look to the trial court's order. If the deferred sentence does not set out the conditions of probation, there are no conditions to be violated. * * * Thus the conditions of probation should be made clear in the judgment. * * *" (Emphasis supplied.)
In defining "dangerous drugs" we can first look to the statutory definition to determine if that definition would provide appellee with a clear indication of what his probation terms meant. Section 54-6-27, N.M.S.A. 1953 (Supp. 1973), defines "dangerous drug" in the following language:
"E. `Dangerous drug' means a drug, other than a controlled substance enumerated in Schedule I of the Controlled Substances Act, which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe except under the supervision of a practitioner licensed by law to direct the use of such drug, and hence for which adequate directions for use cannot be prepared. `Adequate directions for use' means directions under which the layman can use a drug or device safely and for the purposes for which it is intended. A drug shall be dispensed only upon the prescription of a practitioner licensed by law to administer such drug, if it:
"(1) is a habit-forming drug and contains any quantity of a narcotic or hypnotic substance, or any chemical derivative of such substance, which has been found under the federal act and the board of pharmacy to be habit-forming;
"(2) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug;
"(3) is limited by an approved application by section 505 of the federal act to the use under the professional supervision *382 of a practitioner licensed by law to administer such drug;
"(4) bears the legend: `Caution: federal law prohibits dispensing without prescription'; or
"(5) bears the legend: `Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.';
"* * *."
The question then becomes whether or not the Board intended this statutory definition to be used because of probation term (a), supra. This question must be answered in the negative since appellee was allowed by the Board to prescribe certain drugs which would fall under the above definition. Therefore, appellee had no way of knowing which so-called statutory "dangerous drugs" were considered "dangerous drugs" by the Board. If the Board intended to use this statutory definition, it should have so stated. However, since this was not done, and since appellee was allowed to prescribe and thus have in his possession certain statutory "dangerous drugs," the Board must have had some other definition in mind at the time it listed the probation terms.
Determining what this other definition could be poses quite some problem. As stated by one of the Board's expert witnesses:
"Well, I think it is difficult to answer what is a dangerous drug. I think the phrasing has been avoided in recent [legislative] acts and there is some difficulty in saying a substance is dangerous or is not, because most substances are dangerous, depending on dosage. It depends on how they are used. There are some drugs, however, that are perhaps more dangerous than others. * * * Drugs that have a high abuse potential we would generally say would be more dangerous than some other drug, but we are talking in a relative sense here."
This same witness later admitted that every drug, whether it is prescribed or not, is not safe in every instance, even when under the control of a physician. In other words, "dangerous drugs" is certainly neither a term that can be understood by a man of reasonable intelligence, nor is it a word of art to the medical profession as a whole. In conclusion, there was really no way for appellee to find out what the term meant. He asked the Board a number of times to define it for him and the Board could not come up with a satisfactory answer because it apparently was not capable of doing so.
I would affirm the trial court. My colleagues in the majority having decided otherwise, I respectfully dissent.
MARTINEZ, J., concurs.