414 P.2d 496

**EL PASO NATURAL GAS COMPANY, a corporation, Pan American Petroleum Corporation, a corporation, Marathon Oil Company, a corporation, and Sunset International Petroleum Corporation, a corporation, Petitioners-Appellants,**

v.

**OIL CONSERVATION COMMISSION of New Mexico, Jack M. Campbell, Chairman, E. S. Walker, Member, A. L. Porter, Jr., Member and Secretary, and Consolidated Oil & Gas, Inc., a corporation, Respondents-Appellees.**

No. 7727.

Supreme Court of New Mexico.

May 16, 1966.

Seth, Montgomery, Federici & Andrews, Santa Fe, for El Paso Natural Gas Co. and Sunset International Petroleum Corp.

Ben R. Howell, Garrett C. Whitworth, El Paso, Tex., for El Paso Natural Gas Co.

Atwood & Malone, Roswell, J. K. Smith, Fort Worth, Tex., for Pan American Petroleum Corp.

Kent Hampton, Findlay, Ohio, for Marathon Oil Co.

Boston E. Witt, Atty. Gen., J. M. Durrett, Jr., Sp. Asst. Atty. Gen., Santa Fe, for Oil Conservation Commission.

Kellahin & Fox, Santa Fe, Holme, Roberts, More & Owen, Ted P. Stockmar, Denver, Colo., for Consolidated Oil & Gas, Inc.

NOBLE, Justice.

Consolidated Oil & Gas, Inc. requested a change in the proration formula in the Basin-Dakota gas pool from the existing "25–75" formula (25% acreage plus 75% acreage, times deliverability) to a "60–40" formula. The Oil Conservation Commission originally denied the change, but on rehearing, limited to the question of recoverable reserves in the pool, reversed its decision, ordered the change, and adopted the "60–40" formula. The Commission then denied a requested rehearing. The Commission's order was reviewed and affirmed by the district court of San Juan County. This appeal is from the judgment of the district court.

■ The district court reviewed only the record of the administrative hearing and concluded as a matter of law that the Commission's order was substantially supported by the evidence and by applicable law. This court, in reviewing the judgment, in the first instance, makes the same review of the Commission's action as did the district court. Reynolds v. Wiggins, 74 N.M.

670, 397 P.2d 469; Kelley v. Carlsbad Irrigation District, 71 N.M. 464, 379 P.2d 763.

As in Continental Oil Co. v. Oil Conservation Com'n, 70 N.M. 310, 373 P.2d 809, the Commission was concerned with a formula allocating production among the various producers from the gas pool—allocation of the correlative rights. It is agreed that the duty of the Commission in this case is identical with that in Continental, but the parties are not in complete agreement as to what Continental requires. Its proper interpretation requires us to again consider the statutes with which we were concerned in that case and which are controlling here. Since the pertinent statutory provisions were quoted at length in Continental Oil Co. v. Oil Conservation Com'n, supra, we shall not restate them in detail.

Recognizing the need and right of the state, in the interest of the public welfare, to prevent waste of an irreplaceable natural resource, the legislature enacted those laws authorizing the Commission to exercise control over oil and gas wells by limiting the total production in the pool, and making it the duty of the Commission to protect the correlative rights of all producers so far as it can be accomplished without waste to the pool. Sections 65–3–1 to 65–3–29, N.M. S.A.1953. A review of the history of our oil and gas legislation reveals the primary concern in eliminating and preventing waste in the pool so far as it can practicably be done, and next the protection of the correlative rights of the producers from the pool. The legislature spelled out the duty of the Commission to limit production in such manner as to prevent waste, while affording:

" * * * to the owner of each property in the pool the opportunity to produce his just and equitable share of the * * gas * * * in the pool, being an amount, * * * so far as such can be practicably obtained *without waste,* substantially in the proportion that the quantity of the recoverable * * * gas * * * under such property bears to the total recoverable * * * gas * * * in the pool, * * *" (§ 65–3–14(a), N.M.S.A.1953) (Emphasis added).

Continental Oil Co. v. Oil Conservation Commission, supra, made clear those purposes and requirements.

The disagreement in this case arises from a difference of opinion as to the proper construction of language in Continental, saying that the statute requires the Commission to determine certain foundationary matters without which the correlative rights of the various owners cannot be fixed, and, specifically, respecting those foundationary matters:

" * * * Therefore, the commission, by 'basic conclusions of fact' (or what might be termed 'findings'), must determine, insofar as practicable, (1) the

amount of recoverable gas under each producer's tract; (2) the total amount of recoverable gas in the pool; (3) the proportion that (1) bears to (2); and (4)

what portion of the arrived at proportion can be recovered *without waste.* \* \* \*"

The appellants argue that those four findings are jurisdictional in the sense that absent any one of them, the Commission lacked authority to consider or change any production formula. While the parties agree that the first three "basic" facts were specifically found, the appellees assert and appellants deny that a percentage determination was made of "what portion of the arrived at proportion" can be recovered without waste. Thus, the main thrust of appellants' argument is directed to the contention that the Commission lacked jurisdiction to change the allocation formula.

We did not, in Continental, say that the four basic findings must be determined in advance of testing the result under an existing or proposed allocation formula. Actually, what we said was:

"\* \* \* That the extent of the correlative rights must be determined before the commission can act to protect them is manifest."

In addition, however, Continental observed that the Commission should so far as practicable prevent drainage between tracts which is not equalized by counter-drainage and to so regulate as to permit owners to utilize their share of pool energy. While Continental stated the four basic findings which the Commission must make before it can change a production formula, we were not concerned with the language in which the findings must be couched. What we said is that a proposed new formula must be shown to have been "based on the amounts of recoverable gas in the pool and under the tracts, insofar as those amounts can be practicably determined and obtained without waste." We then, in effect, said that such findings need not be in the language of the opinion but that they or their equivalents are necessary requisites to the validity of an order replacing a formula in current use. It is, accordingly, apparent that we must consider the Commission's findings to determine whether findings in the language of Continental *or their equivalent* were adopted. We think they were.

The statute, in requiring the allocation order to afford each owner the opportunity to produce his just and equitable share of the recoverable gas in the pool, "so far as such can be practicably obtained without waste," of course, requires the adoption of an allocation formula which will permit the owners to produce as nearly as possible their percentage of the recoverable gas in the pool, with as little waste as can practicably be accomplished. It is obvious to us that each different allocation formula will allow the tract owners to produce a different percentage of the total gas in the pool.

Having determined (1) the amount of recoverable gas under each tract, and (2) the total amount of recoverable gas in the pool, the ideal formula would be one that would permit each owner to recover all of that proportion which the gas underlying his tract bears to the total in the pool. But, since the legislature has required the Commission to protect the pool against waste, it must then test the different proposed formulae against the percentage which (1) bears to (2) to determine which one will permit the tract owner to most nearly produce its percentage of the total gas in the pool with the least waste. When that has been done, then the portion which the gas underlying each tract bears to the total recoverable gas in the pool which can be produced with the least waste can be determined. It is this latter figure which determines the formula that will permit the greater number of owners the opportunity to recover the greatest amount allowable under the applicable statutes. We think the Commission made that determination in this instance.

The Commission termed the relationship between the percentage of total pool allowable apportioned to each tract by a formula, as compared to those percentages of total pool reserves, the A/R factor. It, thus, based each formula on the amounts of recoverable gas in the pool and under the tracts insofar as those amounts can be practicably determined, as Continental requires it to do. Applying the statute and the rule of Continental, the Commission determined that it must then select the allocation formula that will allow the maximum number of wells in the pool to produce as nearly as possible their complete percentage of the pool reserves. The Commission then made the required test applying both the "25–75" and the "60–40" formulae and determined that neither correlative rights nor waste were being adequately protected under the "25–75" formula but that both would be more nearly protected insofar as can be practicably determined under the "60–40" formula, and found the percentage that each owner could produce of the total pool reserves. It was further determined by the Commission that the "60–40" formula will, insofar as it is practicable to do so, afford to each owner the opportunity to use his just and equitable share of the reserve energy and prevent drainage between producing tracts which is not equalized by counter drainage.

■ It is true that the order in this instance did not, in the express language of the Continental Oil Company decision, find the "portion of the arrived at proportion" which "can be recovered without waste." However, our review of the Commission's findings reveals that it did make the requested findings in language equivalent to that required by Continental and did adopt a formula in compliance with statutory requirements. We think the findings as a

whole determine that the percentage set forth in Schedule J constitute the "portion of the arrived at proportion" which can be recovered by each owner without waste. We agree with the district court that the Commission made those basic findings necessary to authorize it to change the production formula and that its Order R–2259–B is valid.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.