531 P.2d 939

Michael P. GRACE, II, and Corinne Grace, Petitioners-Appellants,

v.

OIL CONSERVATION COMMISSION OF NEW MEXICO, Respondent-Appellee,

and

Cities Service Oil Company, and the City of Carlsbad, Intervenors-Appellees.

No. 9821.

Supreme Court of New Mexico.

Jan. 31, 1975.

Marchiondo & Berry, Mary C. Walters, Albuquerque, Ferrill H. Rogers, Oklahoma City, Okl., for petitioners-appellants.

Losee & Carson, Artesia, David L. Norvell, Atty. Gen., William F. Carr, Sp. Asst. Atty. Gen., Jason Kellahin, Santa Fe, for appellees.

## OPINION

STEPHENSON, Justice.

Appellants (the Graces) petitioned the district court for review of Oil Conservation Commission (the Commission) Order No. R–1670–L (the Order) which was entered on June 30, 1972, pursuant to § 65–3–22(b), N.M.S.A.1953. The district court affirmed the Commission. We affirm the district court.

The Order dealt with the South-Carlsbad Morrow Gas Pool (the Pool) in Eddy County. The Commission made eighty-six findings of fact from which it appears the pool is a relatively new one with little production history. The Commission's findings deal with all of the foundationary matters required to be found as prerequisite to a valid proration order under our leading case on this subject, Continental Oil Co. v. Oil Conservation Com'n, 70 N. M. 310, 373 P.2d 809 (1962). Complete and detailed findings were made on the subject of marketing facilities, production capacities, market demand, drainage and counter-drainage, correlative rights and waste. No assertion is made that the findings do not support the conclusions.

Based upon the findings, the Commission ordered the pool to be prorated effective September 1, 1972. Certain rules and regulations of the Commission were made applicable to the pool. The allowable production was provided to be allocated on a monthly basis by first deducting the total allowable assigned to marginal wells and allocating the remaining allowable among the non-marginal wells in the proportion that each well's acreage factor bore to the total of the acreage factors for all non-marginal wells in the pool.

The Graces filed an application for rehearing as provided by § 65–3–22(a), N.M.S.A.1953 asserting that, based upon the record, the Commission did not have jurisdiction to institute gas prorationing in the pool, and that the Commission improperly included acreage within the horizontal limits of the pool which has wells thereon not in communication with, or in the same common source of supply as the other wells in the area.

The motion for rehearing was denied by the Commission's failure to act thereon within ten days. § 65–3–22(a).

The Graces then petitioned the district court for review of the order. The grounds stated in the application for rehearing defined and limited the issues which could be reviewed on appeal to the district court. § 65–3–22(b), N.M.S.A. 1953. In its amended form, the petition asserted that there was no substantial evidence to support the Commission's jurisdictional findings that waste, as defined by § 65–3–3, N.M.S.A.1953, is occurring or will occur in the pool unless production there-

from is restricted pursuant to § 65–3–13(c), N.M.S.A.1953. It further claimed that the order contained no basic conclusions of fact required to support an order designed to protect the Graces' correlative rights and that it deprived them of their property without due process of law.

During the proceedings in district court, Cities Service Oil Company was granted leave to intervene as a respondent and the City of Carlsbad was granted leave to intervene as a petitioner. Ultimately, the district court, after recounting the proceedings before the Commission and summarizing the Commission's findings and actions, found, inter alia, that the Commission did not act fraudulently, arbitrarily or capriciously in issuing the order; that the transcript of the proceedings before the Commission contained substantial evidence to support its findings; that the Commission did not exceed its authority in issuing the order, and that the order was not erroneous, invalid, improper or discriminatory. Judgment was entered and the Graces appeal.

■ The district court reviewed the record of the administrative hearing and concluded as a matter of law that the Commission's order was substantially supported by the evidence and by applicable law. We make the same review of the Commission's action as did the district court. El Paso Natural Gas Co. v. Oil Conservation Com'n, 76 N.M. 268, 414 P.2d 496 (1966).

■ Most of the arguments advanced by the Graces center upon the adequacy of the record to support the Commission's action. That resolves itself into a question of whether or not the findings of fact are supported by substantial evidence, there being no claim that the findings do not support the conclusions of law or that the conclusions of law do not support the order. "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rinker v. State Corporation Commission, 84 N.M. 622, 506 P.2d 783 (1973). In resolving those arguments of the appellant, we will not weigh the evidence. By definition, the inquiry is whether, on the record, the administrative body could reasonably make the findings. See 4 Davis, Administrative Law Treatise, § 29.01 (1958).

■ Moreover, in considering these issues, we will give special weight and credence to the experience, technical competence and specialized knowledge of the Commission. Cf., McDaniel v. New Mexico Board of Medical Examiners, 86 N.M. 447, 525 P.2d 374 (1974); § 4–32–22, subd. A., N.M.S.A.1953.

The Graces assert that the Commission did not have "jurisdiction" to institute gas prorationing in the pool based upon the record before it. There are frequent references to "jurisdiction" in the Graces' briefs and some of their argument is addressed to the jurisdictional issue.

■ There is not a shred of a jurisdictional question here. A lack of jurisdiction means an entire lack of power to hear or determine the case and the absence of authority over the subject matter or the parties. 20 Am.Jur.2d, "Courts" § 87 (1965).

As we said in Elwess v. Elwess, 73 N.M. 400, 404, 389 P.2d 7, 9 (1964):

"The word 'jurisdiction' is a term of large and comprehensive import. It includes jurisdiction over the subject matter, over the parties, and power or authority to decide the particular matters presented, * * *."

■ Certainly the Commission had jurisdiction of the subject matter—conservation of oil and gas—and it had authority to decide the matters presented. See § 65–3–5, N.M.S.A.1953. No question is raised concerning lack of jurisdiction over the parties.

"The authority to decide a cause at all, and not the decision rendered therein, is what makes up jurisdiction; * * *." State v. Patten, 41 N.M. 395, 399, 69 P. 2d 931, 933 (1937).

See Houston Fire and Casualty Insurance Co. v. Falls, 67 N.M. 189, 354 P.2d 127 (1960).

The substance of appellant's argument is that the order was arbitrary, unreasonable, unlawful and capricious, because (a) in the first instance there was lack of substantial evidence that the wells were producing from the same pool; (b) the Commission failed to determine the amount of recoverable gas under each producer's tract or in the pool, and (c) the Order entered by the Commission deprives each producer of the opportunity to produce his fair share of the reserves in a quantity proportionate to the reserves in the pool.

These alleged shortcomings are said to be "jurisdictional." For the reasons mentioned, they are not. Rather, they are what Justice Carmody characterized in Continental Oil Co. v. Oil Conservation Com'n, supra, as "foundationary matters." By this he meant "basic conclusions of fact" which were held to be a prerequisite, together with support in the record, to sustain orders made by the Commission.

This court has in the past improperly phrased certain issues as jurisdictional. For example, in Sims v. Mechem, 72 N.M. 186, 382 P.2d 183 (1963) we held that the failure to find that a pooling order would prevent waste was "jurisdictional," and the case was incorrectly decided on that basis. Actually, the failure to find that the order would prevent waste in Sims was no more jurisdictional than would be a failure to find negligence in a negligence case. Both are matters of proof of an issue that has nothing to do with jurisdiction.

The words "jurisdiction" and "jurisdictional" are occasionally loosely used in Continental Oil (70 N.M. at 321, 373 P. 2d at 816). We understand that case to mean only that certain "basic conclusions of fact" must have been found as facts and supported by the record, and "are necessary requisites to the validity of an order" prorating production. El Paso Natural Gas Co. v. Oil Conservation Com'n, 76 N. M. 268, 414 P.2d 496 (1966).

We will consider the appellant's position upon the true issue presented, which is whether the findings in the order, which clearly comply with the mandate of Continental Oil, supra, are supported by substantial evidence in the record, devoid of any jurisdictional overtones.

Appellants first contend there is not sufficient evidence that the pool is truly a pool. They assert that it was not shown that there is subsurface communication between the wells or that they draw from a common source of supply. This argument is without substance. The record shows that the Morrow member of the Pennsylvanian formation is non-homogenous, consisting of separate stringers varying in thickness and not continuous across the pool with a number of producing zones. The formation is characterized by thickening and thinning and discontinuity over short distances. There was evidence that, although there was no one pay zone common to every well in the pool, nevertheless, there was no one well producing from a zone wholly isolated from every other producing well in the field. There was thus evidence of communication between the wells and that the wells were producing from the same pool. On this record, we do not consider the trial court's sustaining of the Commission's findings to be unreasonable. The first subpoint is ruled adversely to the Graces.

In their second subpoint, the Graces complain that the Commission failed to determine the amount of recoverable gas under each producer's tract or in the pool. The argument has a dual thrust. The findings made by the Commission indicate that, for various reasons, determination of such reserves was not practicable. The Graces point to expert testimony adduced by them to the effect that such determination was possible.

We view this argument as an attack upon the findings of the Commission

which were sustained by the trial court. The findings disclose that the pool had been created by the Commission's order in the spring of 1969 and, thereafter, from time to time extended. At the time of the order, about five thousand four hundred and forty acres were included in the pool. By early 1972, only fourteen wells had been drilled in the entire pool and it had not been completely developed.

Bearing directly upon the contentions made by the Graces, the following findings were included among those made by the Commission:

"(70) That production from the Morrow formation in the subject pool is from many separate stringers which vary greatly in porosity, water saturation, and thickness, both within individual stringers and between stringers.

"(71) That the above-described stringers are not continuous across the pool, but are interconnected by the perforations in the various completions in the pool.

"(72) That due to the above-described variations in the stringers and the lack of continuity of the stringers, the effective feet of pay, porosity of the pay, and water saturation of pay underlying each developed tract cannot be practically determined from the data obtained at the wellbore.

"(73) That there are recoverable gas reserves underlying each of the developed 320 acre tracts within the horizontal limits of the subject pool; that there are 15 developed 320-acre tracts in the pool as defined by the Commission.

"(74) That due to the nature of the reservoir the amount of recoverable gas under each producer's tract cannot be practically determined in the subject pool by a formula which considers effective feet of pay, porosity, and water saturation.

"(75) That due to the nature of the reservoir the amount of recoverable gas under each producer's tract cannot be practically determined in the subject pool by a formula which considers only the deliverability of a well.

"(76) That the amount of gas that can be practicably obtained without waste by the owner of each property in the subject pool substantially in the proportion that the recoverable gas under his tract bears to the total recoverable gas in the pool can be practically determined best by allocating the allowable production among the wells on the basis of developed tract acreage compared to total developed tract acreage in the pool.

"(77) That considering the nature of the reservoir and the known extent of development, a proration formula based upon surface acreage will afford the owner of each property in the pool the opportunity to produce his just and equitable share of the gas in the pool so far as such can be practicably obtained without waste substantially in the proportion that the recoverable gas under such property bears to the total recoverable gas in the pool.

"(81) That considering the available reservoir information, a 100% surface acreage formula is presently the most reasonable basis for allocating the allowable production among the wells delivering to the gas transportation facilities.

"(83) That the adoption of a 100% surface acreage formula for allocating the allowable production in the subject pool will, insofar as is presently practicable, prevent drainage between producing tracts which is not equalized by counter-drainage.

"(85) That the adoption of a 100% surface acreage formula for allocating the allowable production in the subject pool will, insofar as is presently practicable, allow each operator the opportunity to produce his property ratably with all other operators connected to the same transportation facility."

There is evidence that development in this pool is such that data obtained at the well bore, such as effective feet of pay, water saturation and deliverability are not sufficiently reliable to practicably determine recoverable reserves under each tract. There is evidence that the only reasonably accurate method of making such a determination would be by use of a pressure decline curve based upon substantial withdrawals of gas, but that there has not been sufficient production from the field to obtain accurate results by this method. The first well did not commence production until September, 1969, and most of the wells were not connected until about six months prior to the hearing.

The Graces argue that it was possible to determine reserves by other methods, pointing to their expert testimony. One of their witnesses did purportedly compute reserves underlying three tracts. Apart from the fact that this merely argues the weight of the evidence, which we will not consider, it ignores the language of our statutes and the construction placed thereon by this court in Continental Oil, supra. Our statutes are not couched in terms of what is "possible" but speak of what is "practicable" or "practical." § 65–3–14, N.M.S.A.1953. In engineering contexts such as we here consider, what is practicable is of course possible, but what is possible may not be practicable. Cf., Pittsburg, C. C. & St. L. Ry. Co. v. Indianapolis, C. & S. T. Co., 169 Ind. 634, 81 N.E. 487 (1907). Upon this record, we do not find the trial court's approval of the subject findings of the Commission to have been unreasonable.

The second part of the Graces' argument under this subpoint raises a pure legal question. They argue that, without qualification or exception, the Commission is powerless to enter a proration order without first having determined the amount of recoverable gas under each producer's tract and in the pool. They quote from Continental Oil, supra:

"The commission was here concerned with a formula for computing allowables, which is obviously directly related to correlative rights. In order to protect correlative rights, it is incumbent upon the commission to determine, 'so far as it is practical to do so,' certain foundationary matters, without which the correlative rights of the various owners cannot be ascertained. Therefore, the commission, by 'basic conclusions of fact' (or what might be termed 'findings'), must determine, insofar as practicable, (1) the amount of recoverable gas under each producer's tract; (2) the total amount of recoverable gas in the pool; (3) the proportion that (1) bears to (2); and (4) what portion of the arrived at proportion can be recovered *without waste*. That the extent of the correlative rights must first be determined before the commission can act to protect them is manifest." (Emphasis by the Court) 70 N.M. at 318–319, 373 P.2d at 814–815.

The Graces again ignore the phrase "insofar as practicable," which makes Continental Oil readily distinguishable. The Jalmat Pool involved in Continental had been in production for a considerable time. It had been prorated on a pure acreage formula in 1954. An application was made to change the formula and the Commission entered an order to modify the formula to take into account deliverability. The order from which that appeal was taken was entered in early 1958. The Jalmat pool therefore had a considerably longer production history and nothing appears in that opinion which would indicate existing geological problems camparable to those in this case.

"The commission made no finding, even *'insofar as can be practically determined,'* as to the amounts of recoverable gas in the pool or under the tracts." (Emphasis added). 70 N.M. at 319, 373 P.2d at 815

and:

" * * * Further, that portion of the same finding that there is a 'general correlation between the deliverabilities of the gas wells in the Jalmat Gas Pool and the recoverable gas in place under the tracts dedicated to said wells' is not tantamount to a finding that the new formula is based on the amounts of recoverable gas in the pool and under the tracts, *insofar as these amounts can be practically determined* and obtained without waste. *Lacking such findings,* or their equivalents, a supposedly valid order in current use cannot be replaced. Such findings are necessary requisites to the validity of the order, * * * ." (Emphasis added). 70 N.M. at 320, 373 P.2d at 815.

In Continental, no reason whatever appeared for the Commission's failure to determine the amount of recoverable gas under each producer's tract or in the pool and this court specifically recognized that this determination need only be made "insofar as these amounts can be practically determined." In this case, we are dealing with a very different situation and we have elaborate findings detailing reasons why the determination of such reserves was impracticable at the time of the hearing. We hold those findings valid.

The prime objective of the statutes under consideration is, "in the interest of the public welfare, to prevent waste of an irreplaceable natural resource." El Paso Natural Gas Co. v. Oil Conservation Com'n, supra. The Graces would have us hold that the Commission is powerless to enter proration orders in respect to newly discovered pools until sufficient data has been gleaned to make the reserve computations. We do not agree. Prevention of waste is paramount, and private rights, such as prevention of drainage not offset by counter-drainage and correlative rights must stand aside until it is practical to determine the amount of gas underlying each producer's tract or in the pool.

We hold that the Commission is not required as a prerequisite to the entry of a valid proration order, to first determine the amount of gas underlying each producer's tract and in the pool, in a case in which the Commission's findings demonstrate that such determinations are impracticable, and such findings are sustained by the record.

Other than the reservations expressed herein on Continental Oil's inaccurate use of the concept of jurisdiction, we reaffirm Continental Oil's requirements and continue to regard it as the primary oil and gas decision in New Mexico.

■ As their final subpoint, the Graces argue that they have been deprived of the opportunity to produce their fair share of the reserves. What we have said adequately answers this contention. Nor do we deem it necessary to elaborate on their second point to the effect they were entitled to a stay of the district court's judgment. Section 65-3-22(c), N.M.S.A.1953 disposes of the contention.

The judgment of the district court is sustained.

It is so ordered.

JAMES A. MALONEY and STANLEY F. FROST, District Judges, concur.