532 P.2d 582

**RUTTER & WILBANKS CORPORATION,**
a Texas Corporation, Petitioner-
Appellant,

v.

**OIL CONSERVATION COMMISSION of the**
State of New Mexico, Respondent-
Appellee,
and
**Black River Corporation, Intervenor-**
Appellee.

**No. 9907.**

Supreme Court of New Mexico.

Feb. 21, 1975.

Kellahin & Fox, Santa Fe, for appellant.

David L. Norvell, Atty. Gen., William F. Carr, Special Asst. Atty. Gen., Santa Fe, for Oil Conservation Comm.

Hinkle, Bondurant, Cox & Eaton, Harold L. Hensley, Jr., Roswell, for Black River Corp.

## OPINION

STEPHENSON, Justice.

This appeal arises out of two suits brought in the District Court of Eddy County to reverse orders entered by the Oil Conservation Commission (the Commission) in August and November, 1972, which created two "nonstandard gas proration units" and force pooled the tracts comprising the units, which are in the Washington Ranch—Morrow Gas Pool. After separate hearings before the Examiner, the cases were consolidated for hearing before the full Commission as well as for trial before the district court. After reviewing the record and hearing argument, the district court upheld the Commission's decisions. Rutter and Wilbanks Corporation (R & W) is the only party to the proceedings below who contests the district court's ruling.

R & W is the owner of overriding royalty interests in the northerly portion of each of the two units consisting of the east half (409.22 acres) and the west half (407.-20 acres) of Section 3, Township 26, South, Range 24, East, N.M.P.M., Eddy County. The effect of the Commission's orders was to include certain undrilled areas in the southern portion of the section within the two drilling units, each of which had a completed gas well, thus diluting the overriding royalty interests of R & W.

R & W did not, and does not here, object to the compulsory pooling but only to the size of the non-standard units. It contends the Commission orders are "unlawful, unreasonable, arbitrary and capricious" because (1) the Commission did not comply with the state statutes regulating oil and gas wells in creating "the non-standard proration units" and (2) the orders do not protect the correlative rights of R & W as required by law.

The district court reviewed the record of the administrative hearing and concluded, as a matter of law, that the Commission's orders were substantially supported by the evidence and by applicable law. We make the same review of the Commission's action as did the district court. Grace v. Oil Conservation Com'n, N.M., 531 P.2d 939 (decided January 31, 1975); El Paso Natural Gas Co. v. Oil Conservation Com'n, 76 N.M. 268, 414 P.2d 496 (1966). We are restricted to considering whether, as a matter of law, the action of the Commission was consistent with and within the scope of its statutory authority, and whether the administrative orders are supported by substantial evidence. McDaniel v. New Mexico Board of Medical Examiners, 86 N.M. 447, 525 P.2d 374 (1974); Otero v. New Mexico State Police Board, 83 N.M. 594, 495 P.2d 374 (1972); Seidenberg v. New Mexico Board of Medical Exam., 80 N.M. 135, 452 P.2d 469 (1969); Llano, Inc. v. Southern Union Gas

Company, 75 N.M. 7, 399 P.2d 646 (1964); Cameron v. Corporation Commission, Okl., 414 P.2d 266 (1966).

R & W's first contention is without merit. The argument is that the applicable statutes make no distinction between "spacing units" and "proration units" and that because the orders were inadvertently characterized as creating "non-standard proration units", the Commission could not create these spacing units without first determining that they qualified as proration units under § 65-3-14(b), N.M.S.A. 1953. There is no question that what the Commission intended to do, and in fact did, was to create two non-standard spacing units. Before the Commission, R & W expressly rejected any need or desire for the gas pool to be prorated. R & W's authority for this proposition is a footnote to an oil and gas text which recites:

"In states like New Mexico, Louisiana, Oklahoma, Arkansas and others where the conservation agency is authorized to create drilling or spacing units and to limit and prorate the production of oil or gas, or both, the terms drilling unit and proration unit become practically synonymous." 1A Summers, Oil and Gas § 95 at 52 n. 16 (2nd ed. 1954).

Were this case controlled by § 69-213½, N.M.S.A. 1941 (Supp.1949), the statute which Professor Summers cites for the foregoing statement, R & W might have a colorable argument since no explicit distinction between the two terms was made therein. Since 1949, however, the Act has been amended several times, the most recent occurring in 1961. The progeny of § 69-213½, supra, is § 65-3-14, N.M.S.A. 1953, as amended. That section and others in the act explicitly maintain the distinction by the use of the phrase "spacing or proration unit", indicating that the terms are not synonymous and implying that a spacing unit may be created independently of a proration unit. See § 65-3-14(c), N.M.S.A. 1953 (Supp.1973), § 65-3-14.5, N.M.S.A. 1953 (Supp.1969). Additionally,

the section upon which R & W relies, § 65-3-14(b) supra, commences with "The commission may establish a proration unit for each pool, * * *.", indicating the permissive character of the power.

The authority of the Commission to create spacing units is found in § 65-3-11, N.M.S.A. 1953, as amended. The second paragraph of this section provides:

"Apart from any authority, express or implied, elsewhere given to or existing in the commission by virtue of this act or the statutes of this state, the commission is hereby authorized to make rules, regulations and orders for the purposes and with respect to the subject matter stated herein, viz.:

* * * * * *

"(10) To fix the spacing of wells; ·

"* * *."

Pursuant to this authority, the Commission has provided for well spacing by adoption of Rule 104. The applicable section says that:

"Unless otherwise provided in the special pool rules, each development well for a defined gas pool of Pennsylvanian age or older which was created and defined by the Commission after June 1, 1964, shall be located on a designated drilling tract consisting of 320 surface contiguous acres, more or less, comprising any two contiguous quarter sections of a single governmental section, being a legal subdivision of the U. S. Public Land Surveys. * * *" N. M. Oil Conservation Com'n Rules and Reg., No. 104(C)(II)(a)(1972).

■ This rule sets the general standard for creating spacing units. There is no dispute that the units created here satisfy the requirements of the rule cited above. We find no merit to R & W's contention and hold the Commission has power to fix spacing units without first creating proration units.

R & W does not "question the Commission's authority to create non-standard

[spacing] units" under § 65–3–14.5(C), N. M.S.A. 1953 (Supp.1969) which provides:

"C. Nonstandard spacing or proration units may be established by the commission and all mineral and leasehold interests in any such nonstandard unit shall share in production from that unit from the date of the order establishing the said nonstandard unit."

But R & W then makes an unlawful delegation argument based on inadequate standards regarding the Commission's authority under § 65–3–14.5, supra, or under a Commission rule or regulation. It contends the Commission exceeded its authority because it had no standards to follow in creating the non-standard spacing units in excess of the 320 acre standard spacing unit provided for in Rule 104(C), supra. We disagree.

Section 65–3–10, N.M.S.A. 1953 provides:

"The commission is hereby empowered, and it is its duty, to *prevent the waste* prohibited by this act and to *protect correlative rights,* as in this act provided. To that end, the commission is empowered to make and enforce rules, regulations and orders, and *to do whatever may be reasonably necessary* to carry out the purposes of this act, *whether or not indicated or specified in any section hereof.* (Emphasis added).

Additionally, N. M. Oil Conservation Com'n, Rules and Reg. No. 104(L) (1971) specifically provides:

"L. In order to *prevent waste* the Commission may, after notice and hearing, fix different spacing requirements and require greater acreage for drilling tracts in any defined oil pool or in any defined gas pool notwithstanding the provisions of B and C above." (Emphasis added).

■ We think it would be impracticable and unreasonable to require legislation setting out more precise standards than those provided above. See Oxford Oil Co. v.

Atlantic Oil & Producing Co., 16 F.2d 639 (N.D.Tex.1926), aff'd, 22 F.2d 597 (5th Cir. 1927); Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, reh. denied, 126 Tex. 296, 87 S.W.2d 1069 (1935). We hold these standards sufficient to allow the Commission's power to prorate and create standard or non-standard spacing units to remain intact. The fact that more explicit standards appear in particular sections of the conservation statutes does not dictate a different result.

■ R & W also argues the Commission's authority to pool is limited to lands "embraced within a spacing or proration unit" citing § 65–3–14(c), N.M.S.A.1953 (Supp.1973). Relying on several treatises explaining that compulsory pooling statutes grew out of the "small tract problem", R & W draws the conclusion that § 65–3–14(c) "assumes that the tract sought to be pooled is 'embraced within' a standard spacing [320 acres] or proration unit". See 6 Williams & Meyers, Oil & Gas Law § 905.2 (1972). The unstated implication of this contention is that the Commission's power to pool is limited to tracts within 320 acre standard spacing units. Rule 104(L), supra, disposes of this argument. Recognizing the Commission's power to pool separately owned tracts "within a spacing or proration unit" (§ 65–3–14(c), supra), as well as its concomitant authority to establish oversize non-standard spacing units (§ 65–3–14.5(C), supra, Rule 104(L), supra) it would be absurd to hold the Commission does not have authority to pool separately owned tracts within an oversize non-standard spacing unit.

R & W finally complains that the Commission's orders did not make sufficient findings on either the prevention of waste or the protection of correlative rights and that, in any event, the orders are not supported by "substantial evidence" and are therefore void.

The allegation as to the insufficiency of the findings is not seriously argued. The only defect in the orders appearing to R &

W is that "the type of waste contemplated is not mentioned." The pertinent findings in Commission Order R–4353–A state:

"(2) That after an examiner hearing, Commission Order No. R–4353, dated August 7, 1972, was entered in Case No. 4763 pooling all mineral interests, whatever they may be, in the Washington Ranch-Morrow Gas Pool underlying the E/2 of Section 3, Township 26 South, Range 24 East, NMPM, Eddy County, New Mexico, to form a 409.22-acre nonstandard gas proration unit to be dedicated to Black River Corporation's Cities "3" Federal Well No. 2, located 2212 feet from the North line and 1998 feet from the East line of said Section 3, and designating Black River Corporation as operator of the unit.

(4) That the evidence presented at the hearing *de novo* indicates that the entire E/2 of the above-described Section 3 can reasonably be presumed to be productive of gas from the Washington Ranch-Morrow Gas Pool.

(5) That the evidence presented at the hearing *de novo* establishes to the satisfaction of the Commission that the entire E/2 of the above-described Section 3 can be efficiently and economically drained by the above-described Cities "3" Federal Well No. 2.

(6) That to reduce the size of the proration unit dedicated to said Cities "3" Federal Well No. 2, as proposed by Rutter and Wilbanks Corporation, would deprive the owners of mineral interests in that portion of the unit which would be deleted of the opportunity to recover their just and equitable share of the hydrocarbons in the Washington Ranch-Morrow Gas Pool, unless a third well were to be drilled in said Section 3, with a complete realignment of the acreage dedicated to the subject well and to the well located in the W/2 of Section 3.

(7) That to drill a third well in Section 3, Township 26 South, Range 24 East, Washington Ranch-Morrow Gas Pool, would result in supererogatory risk and economic waste caused by the drilling of an unnecessary well.

(8) That Commission Order No. R–4353 provides protection for the correlative rights of all mineral interest owners in the E/2 of Section 3, when considered as a whole, and will result in the prevention of waste.

Commission Order R–4354–A, which force pooled the west half of Section 3, essentially recites the same pertinent findings.

■ This court's opinion in Continental Oil Co. v. Oil Conservation Com'n, 70 N. M. 310, 373 P.2d 809 (1962), established the requirement that the Commission make "basic conclusions of fact" or findings. We hold the findings as to correlative rights and economic waste to be sufficient.

The remaining question is whether these orders are supported by substantial evidence.

In Grace v. Oil Conservation Com'n, *supra*, we recently said:

" 'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rinker v. State Corporation Commission, 84 N.M. 622, 506 P.2d 783 (1973). In resolving those arguments of the appellant, we will not weigh the evidence. By definition, the inquiry is whether, on the record, the administrative body could reasonably make the findings. See 4 Davis, Administrative Law Treatise, § 29.01 (1958).

"Moreover, in considering these issues, we will give special weight and credence to the experience, technical competence and specialized knowledge of the Commission. Cf., McDaniel v. New Mexico Board of Medical Examiners, 86 N.M. 447, 525 P.2d 374 (1974); § 4–32–22A., N.M.S.A.1953."

Both R & W and the intervenor, Black River Corporation, produced experts and exhibits regarding the advisability of creating these non-standard units and force pooling the tracts. R & W introduced an

exhibit which clearly shows that all of Section 3 is estimated to be commercially productive of gas. This is also true of the west half of Section 2, which is contiguous to Section 3 on the east, and on the east half of Section 4, which is contiguous to Section 3 on the west. The exhibit also shows producing gas wells on the aforementioned contiguous half sections and the testimony indicates these are also oversize non-standard spacing units, containing approximately 402 acres in the east half of Section 4 and approximately 380 acres in the west half of Section 2.

Mr. Aycock, Black River's expert, testified that the completed wells in Section 3 should be placed in production as soon as possible to prevent drainage to Sections 4 and 2 and thereby to protect the correlative rights of all interest owners in Section 3.

The evidence presented by Black River Corporation, and not seriously disputed by R & W, indicates that the existing wells in Section 3 will effectively and efficiently drain the allotted acreage.

Arguing the Commission would not protect its correlative rights if the proposed spacing units were established larger than 320 acres, R & W proposed alternatives which would cut out tract owners in the southern portion of Section 3. This would either leave them with no well to produce hydrocarbons underlying their land or require them to drill to protect their own correlative rights. To support the orders, the Commission concluded from the evidence that the drilling of an extra well would be unnecessary since the two completed wells would effectively and efficiently drain all of Section 3 and that it would be economically wasteful. It appears the extra well would, at most, effect a $37,500 redistribution of royalty income to R & W while the evidence undisputedly showed that the costs of this drilling would reach $180,000 if it was a dry hole and range from $225,000 to $250,000 if it was a producer. It further appears there would be a risk of drilling a dry hole in the southern part of Section 3 resulting in a complete commercial failure. As far as is now known, the added expense of drilling an extra well would enable the recovery of no substantial amount more gas underlying Section 3 than the two completed wells could drain. The question was one of reasonableness and the Commission found that it would be unreasonable and contrary to the spirit of the conservation statutes to drill an unnecessary and economically wasteful well. See Grace v. Oil Conservation Com'n.

Though there was some indication that tract owners in the southern portion of Section 3 had no recoverable gas underlying their property, it also appears that the Washington Ranch-Morrow Pool is still being developed and proof as to its recoverable reserves and its limits and character is far from complete. In a comparable factual situation, the Oklahoma Supreme Court commented, when referring to an earlier opinion:

"We also recognized the risk, without such a requirement (and under wide spacing) of some owners of mineral interests being enabled to share, at least, for a time, in production to which subsequently developed knowledge (whether gained from wells later drilled on smaller units, or otherwise) indicates they were never entitled, because of the (subsequently established) unproductivity of the locus of their interests. But, in said opinion (p. 853) we had also noted that the prevention of wasteful, excessive drilling (as well as the protection of correlative rights) was a primary Legislative consideration in the enactment of the original Well Spacing Act. And, we concluded that it has been the policy of the Legislature to tolerate the lesser hazard (i. e., the possibility that some production, or production proceeds, may be taken from some owners rightfully entitled to it, and transmitted to others not so entitled) ' * * * in preference to

the greater hazard to the greater number of owners, and the State in the dissipation of its natural resources by excessive drilling.' \* \* \* \* \* ". Landowners, Oil, Gas & Roy. Own. v. Corporation Com'n, Okl., 415 P.2d 942, 950 (1966), referring to Panhandle Eastern Pipe Line Co. v. Corporation Com'n, Okl., 285 P.2d 847 (1955).

See also Grace v. Oil Conservation Com'n; Ward v. Corporation Commission, Okl., 470 P.2d 993 (1970).

Nothing we have said to now is contrary to Continental Oil, supra. When the Commission exercises its duty to allow each interest owner in a pool "his just and equitable share" of the oil or gas underlying his property, the mandate to determine the extent of those correlative rights, as prescribed by § 65-3-29(H), N.M.S.A. 1953, is subject to the qualification "as far as it is practicable to do so." See Grace v. Oil Conservation Com'n. While the evidence lacked many of the factual details thought to be desirable in a case of this sort, it was because the appropriate data was as yet unobtainable. We cannot say that the exhibits, statements and expressions of opinion by the applicant's witness do not consitute "substantial evidence" or that the orders were improperly entered or that they did not protect the correlative rights of the parties "so far as [could] be practicably determined" or that they were arbitrary or capricious.

The Commission established a participation formula giving each owner in the unit a share in production in the same ratio as his acreage bears to the acreage of the whole units. We think such a formula is a reasonable and logical one, if perhaps not the most complete or accurate method that may be used when more subsurface information becomes available.

Having found no cause for reversal of the orders appealed from, they are hereby affirmed.

It is so ordered.

OMAN and MONTOYA, JJ., concur.