672 P.2d 280

**VIKING PETROLEUM, INC.,**
Petitioner-Appellee,

v.

**OIL CONSERVATION COMMISSION OF the STATE OF NEW MEXICO and Harvey E. Yates Company, Respondents-Appellants.**

No. 14632.

Supreme Court of New Mexico.

Nov. 17, 1983.

W. Perry Pearce, Santa Fe, for respondent-appellant Oil Conservation Com'n.

Losee, Carson & Dickerson, A.J. Losee, Artesia, for respondent-appellant Harvey E. Yates Co.

Jones, Gallegos, Snead & Wertheim, Arturo L. Jaramillo, Santa Fe, for petitioner-appellee.

## OPINION

FEDERICI, Justice.

Viking Petroleum, Inc., petitioner-appellee (Viking), is the holder of an oil and gas leasehold estate on the E ½, NW ¼, Section 18, Township 9 South, Range 27 East, NMPM, Chaves County, New Mexico. Harvey E. Yates Company, respondent-appellant (HEYCO), is the operator of the oil and gas leasehold estate on the W ½, NW ¼ and SW ¼ of Section 18, Township 9 South, Range 27 East, NMPM, Chaves County, New Mexico. Viking controls 25%, and HEYCO controls 75% of the underlying mineral interests. HEYCO applied for a permit to drill to the Ordovician formation. Viking agreed to participate in the drilling costs to the base of the shallower Abo formation, but declined to participate in the drilling of a well to the deeper Ordovician formation.

The Oil Conservation Commission of the State of New Mexico, respondent-appellant (Commission), denied Viking's request for partial participation. After a hearing, the Commission issued Order R–6873 (Order), which required all mineral interests pooled through the Ordovician formation to form a standard 320-acre gas spacing and prorationing unit to be dedicated to a well to be drilled at a standard location on the tract. The Order also provided that there should be withheld from any nonconsenting working interest owner's share of production his share of reasonable well costs plus 200% as a reasonable charge for the risk in drilling the well. The Order authorized HEYCO to withhold a pro rata share of all drilling costs as a means of collecting the penalty from Viking as a nonparticipating working interest owner. Viking's application for

rehearing was automatically denied by failure of the Commission to act on the application within ten days.

Viking filed a Petition for Review of the Order and a Motion for Stay or Suspension of Order in the District Court of Chaves County. After a hearing on the motion, the district judge entered a decision suspending the Order. The district court's decision was conditional upon Viking's tender of $90,000 to HEYCO as Viking's estimated share of the cost of drilling and completing the well to the base of the Abo formation.

There was a dispute at the hearing as to whether Viking was willing and able to assume its share of the risk of the proposed well through the Abo by advancing to HEYCO Viking's share of those particular costs. Concerning the share of the risk and drilling costs for the well to formations *below* the Abo, Viking presented the concept of "partial participation," which ultimately became the central issue on appeal to the district court. Viking contended that as a correlative right owner it was entitled to participate partially in the subject well by paying in advance for its share of costs to the Abo. Concerning the drilling and completion costs below the Abo, Viking wished to proceed on a "carried basis." HEYCO, as operator, would be entitled to full reimbursement for Viking's share of the drilling and completion costs carried by HEYCO below the Abo. The payment was to be made out of Viking's share of the production from formations below the Abo until those costs were fully recouped by HEYCO.

Viking further contended that if a risk penalty under NMSA 1978, Section 70–2–17(C) would be appropriate at all in this case, it could *only* be applied to the drilling and completion costs being carried on behalf of Viking *below* the Abo formation. In other words, since HEYCO would not be required to advance any drilling or completion costs on behalf of Viking from the surface through the Abo formation, HEYCO would not be assuming any risk as to Viking's share of those costs and would not

be entitled to risk compensation. With regard to the imposition of a risk penalty for the carried costs *below* the Abo, Viking argued that it was within the discretion of the Commission not to permit any risk penalty at all because the lack of production history in the deeper formations rendered the drilling venture below the Abo an extreme and unjustified risk for correlative right owners.

Following submission of briefs and without further hearing or oral arguments the district court held that Viking's application for rehearing preserved its right to object to the Commission's denial of partial participation. The district court also held that *as a matter of law* the Commission must provide partial participation by Viking unless there is substantial evidence in the record that such participation is clearly unreasonable. After reviewing the record of the Commission hearing, the district court concluded that the Order was not supported by substantial evidence, and that the Order was arbitrary, capricious, and contrary to law. We reverse.

■ We are limited to the same review of administrative actions as the district court. *Reynolds v. Wiggins,* 74 N.M. 670, 397 P.2d 469 (1964). This standard was applied to review of Commission orders in *El Paso Natural Gas Company v. Oil Conservation Commission,* 76 N.M. 268, 414 P.2d 496 (1966).

■ Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rinker v. State Corporation Commission,* 84 N.M. 626, 506 P.2d 783 (1973). We must view the evidence and all reasonable inferences in the light most favorable to support the findings, and any evidence unfavorable will not be considered. *Martinez v. Sears, Roebuck and Co.,* 81 N.M. 371, 467 P.2d 37 (Ct.App.), *cert. denied,* 81 N.M. 425, 467 P.2d 997 (1970). Special weight will be given to the experience, technical competence and specialized knowledge of the Commission. *Rutter & Wilbanks Corporation v. Oil Conservation Commission,* 87 N.M. 286, 532 P.2d 582 (1975); *Grace v. Oil*

*Conservation Commission,* 87 N.M. 205, 531 P.2d 939 (1975). Our review is limited to the evidence presented to the Commission, and the administrative findings by the Commission should be sufficiently extensive to show the basis of the order. *Continental Oil Company v. Oil Conservation Commission,* 70 N.M. 310, 373 P.2d 809 (1962). The findings must disclose the reasoning of the Commission in reaching its conclusion. *Fasken v. Oil Conservation Commission,* 87 N.M. 292, 532 P.2d 588 (1975).

*Pooling.*

■ Forced pooling of multiple zones with an election to participate in less than all zones is a question of first impression in New Mexico.

The Legislature, in an apparent desire to encourage the exploration and development of oil and gas in situations similar to the one before us, adopted NMSA 1978, Section 70–2–17(C), which provides in part as follows:

C. When two or more separately owned tracts of land are embraced within a spacing or proration unit, or where there are owners of royalty interests or undivided interests in oil and gas minerals which are separately owned or any combination thereof, embraced within such spacing or proration unit, the owner or owners thereof may validly pool their interests and develop their lands as a unit. *Where, however, such owner or owners have not agreed to pool their interests, and where one such separate owner, or owners, who has the right to drill has drilled or proposes to drill a well on said unit to a common source of supply, the division, to avoid the drilling of unnecessary wells or to protect correlative rights, or to prevent waste, shall pool all or any part of such lands or interests or both in the spacing or proration unit as a unit.* (Emphasis added.)

We now review the conclusion reached by the Commission to determine whether the provisions of the Order are supported by substantial evidence. The first of the key pro-

visions pooled the 320-acre tract from the surface to the Ordovician formation. The Commission found that to prevent waste, to protect correlative rights and to allow each interest owner to recover its fair share of gas, the mineral interests will be pooled to the lower formation. HEYCO's geologist testified that relying on an Abo well would not be economical because the risk involved was so great. Both sides presented expert testimony on quantities of oil and gas from formations below the Abo through the Ordovician which were commercially feasible to recover. The force pooling provision in the order is supported by a finding allowing interest owners to recover their fair share from the Ordovician formation. There is substantial evidence in the record to support the finding of the Commission that oil and gas reserves in the Ordovician were commercially feasible to produce. The Commission found that any nonconsenting working interest owner should be allowed to pay his share of well costs out of production. In addition, the Commission found that a reasonable charge for the risk taken in drilling the well is 200% and any nonconsenting working interest owner who does not participate should be subject to this risk charge.

Based upon its findings the Commission: (1) pooled the 320-acre tract applied for from the surface to the Ordovician formation; (2) ordered HEYCO to proceed with due diligence to drill a test well to the Ordovician formation; (3) allowed any working interest owner who had not yet agreed to participate the option of paying his share of well costs, enabling such owner to avoid any risk charge; (4) authorized the operator to withhold the pro rata share of well costs plus a risk charge of 200% from production attributable to any nonparticipating working interest owner; (5) ordered that any amounts withheld from production should be withheld only from the working interest portion of production, not from the royalty interest portion.

*Commercial Production Below the Abo.*

In considering the application, the Commission heard evidence presented by HEY-CO on the reasons for drilling this well to the Ordovician formation. It was the position of HEYCO's expert witness, Rodney O. Thompson (Thompson), that the most likely production from a well in the proposed location was from the geological formation which he referred to as the pre-Mississippian dolomite.

In discussing all of the prospective zones at the proposed location, Thompson stated that he believed that the pre-Mississippian dolomite and the Basal Penn sand were the most likely prospects. Based on the structure map which he had prepared from information derived from other wells in the area, Thompson testified that the location represented an excellent prospect in these two formations. The testimony and exhibits indicate that in the general area of the proposed location of the well there is commercial production potential from the pre-Mississippian dolomite.

In response to the expert testimony presented by HEYCO, Viking presented expert testimony from Morris Ettinger (Ettinger) which indicated that there was not sufficient evidence to justify the expenditure of funds for a deeper test. Ettinger testified that his review of the proposal indicated that a deeper test was unreasonable for a prudent joint interest owner and operator of a well in that area.

There is substantial evidence in the record to support the finding of the Commission that the most likely production would be from the pre-Mississippian dolomite, and that the well was economically feasible.

*Commercial Production From the Abo.*

An expert witness called by HEYCO testified that in his opinion the San Andres formation, which had a shallower depth than the Abo formation, was a likely secondary prospect, and that he expected to encounter some oil production from the San Andres. He expressed the opinion that although he expected to encounter gas production in the Abo formation at the proposed location, he believed that there was a high risk of those reserves being noncommercial. In fact, this expert witness expressed his opinion that it would not be a

justifiable economic risk to drill a well at the proposed location depending *only* upon Abo production.

Viking presented contradictory evidence through their expert witness, Ettinger, who gave his opinion that there was a good chance of commercial production from the Abo. He stated that Viking was willing to participate in a well drilled to the Abo formation at the proposed location.

The record contains substantial evidence to support the finding of the Commission that production from the Abo formation alone would not be to the advantage of the mineral interest and royalty owners, and that drilling to a deeper zone would prevent waste and protect correlative rights.

*Risk Involved.*

Witnesses for both parties at the proceeding before the Commission testified that there is a substantial risk involved in drilling a well to the Abo or the Ordovician, or in drilling any well. The finding that risk was involved and the finding of the proportionate share to be assumed by the owners is supported by substantial evidence.

*Reimbursement to HEYCO for Costs and Risk Charges.*

 The application before the Commission not only requested that the designated mineral interests be pooled, but also that HEYCO be named operator and be entitled to recover the pro rata share of well costs and compensation for risk out of production from any nonconsenting working interest owner. Reimbursement of costs and risk charges is authorized by NMSA 1978, Section 70–2–17, which mandates that provision be made for payment from production of well costs for "any owner or owners who elects not to pay his proportionate share in advance." This section further allows the inclusion of a charge for the risk involved in the drilling of such well, which charge shall not exceed 200% of the nonconsenting working interest owner's or owners' pro rata share of the cost of drilling and completing the well. The granting or refusal to grant forced pooling of multiple zones with an election to participate in less than all zones, the amount of costs to be reimbursed

to the operator, and the percentage risk charge to be assessed, if any, are determinations to be made by the Commission on a case-to-case basis and upon the particular facts in each case.

Based upon the record in this case, we find that there was substantial evidence to support the findings made and conclusions reached by the Commission, and that the Commission's Order is not arbitrary, capricious, or contrary to law.

The judgment of the district court is reversed. The order of the Commission is affirmed.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.